Food for Pets v. Just for Pets      CV-95-470-M    12/13/96
                    UNITED STATES DISTRICT COURT FOR THE

                          DISTRICT OF NEW HAMPSHIRE


FOOD FOR PETS, INC.,
                    Plaintiff,

          v.                                          Civil No. 95-470-M

JUST FOR PETS SUPERSTORES, INC.,
                    Defendant.


                              **O R D E R**


     Plaintiff, Food For Pets, Inc., alleges that defendant, Just

For Pets Superstores, Inc., has violated its rights protected by

the Lanham Act (Count I), the New Hampshire State Trademark Act

(Count II), the common law of unfair competition (Count III), and

the New Hampshire Consumer Protection Act (Count IV).  Before the

court is defendant's motion for summary judgment (document no.

17).


                         I.  BACKGROUND

     Plaintiff, Food For Pets, Inc., is a New Hampshire

corporation engaged in the business of selling pet food,

accessories, and supplies through stores in Amherst and

Manchester, New Hampshire.  Plaintiff adopted the service mark

"FOOD FOR PETS" on October 3, 1978, and has used its service mark

continuously in both interstate and intrastate commerce. Plaintiff also alleges that it is the owner of the New Hampshire State Trademark Registration for the service mark "FOOD FOR PETS," which issued on December 30, 1994.

The service mark "FOOD FOR PETS," as well as the slogan "If you love your pets, you'll love our prices," has been used by plaintiff in promotional and advertising activities in the New Hampshire market. Furthermore, plaintiff used a distinctive telephone number at its Amherst store, selected to aid customers in remembering the number. The number consists of the local exchange followed by "7387" which equates to the letters "PETS" on a telephone keypad or dial.

Defendant, Just For Pets Superstores, Inc., is a Delaware corporation engaged in the business of selling pet foods and supplies throughout New England. In 1990, defendant's parent company, New England Serum Company, began opening retail stores throughout Massachusetts and the Northeast, modeled on the retail warehouse or "superstore" format. After consulting a marketing firm in 1990, the parent company chose a name for its pet supply business — "Just For Pets Superstore." Thereafter, defendant filed a federal trademark registration application for its "JUST FOR PETS SUPERSTORE" service mark. The application issued as

United States Trademark Registration No. 1,663,844 on November 5, 1991.

In November of 1993, defendant entered the New Hampshire market, opening a retail "superstore" in Manchester, New Hampshire under the service mark "JUST FOR PETS SUPERSTORE." Defendant selected a telephone number for its Manchester store that consisted of the local exchange followed by the numbers "7387," which also equate the letters "PETS" on a telephone key pad or dial. In October of 1994, defendant opened a second retail store in Nashua, New Hampshire, under the identical "JUST FOR PETS SUPERSTORE" service mark. The Nashua store also adopted a telephone number comprising the local exchange followed by the numbers "7387" (spelling "PETS").

Defendant has used its service mark, "JUST FOR PETS SUPERSTORE," in promotional and advertising activities in the New Hampshire market. One such advertisement was placed in the Manchester Union Leader, a newspaper with circulation throughout the state, on February 8, 1995, six days before Valentine's Day. The beginning line in the text portion of the advertising copy is reminiscent of plaintiff's slogan, and read "If you love your pet, come to Just For Pets Superstore®!"

## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986).  The party opposing the motion, plaintiff in this case, must set forth specific facts showing that there remains a genuine issue for trial, demonstrating "some factual disagreement sufficient to deflect brevis disposition."  Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). This burden is discharged only if the cited disagreement relates to a genuine issue of material fact.  Wynne v. Tufts University School of Medicine, 976 F.2d 791, 794 (1st Cir. 1992) cert. denied, 507 U.S. 1030 (1993).

The non-moving party, plaintiff here, "may not rest upon the mere allegations or denials of [its] pleadings, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine

issue for trial." Fed. R. Civ. P. 56(e). "Summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R. J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). The non-moving party must present affirmative evidence to defeat a properly supported motion for summary judgment, evidence from which a jury might return a favorable verdict. Anderson, 477 U.S. 242, 257 (1985).

## III. THE LANHAM ACT - (Count I)

Section 43(a) of the Lanham Act provides in relevant part: "Any person who, on or in connection with any . . . services . . . uses in commerce any . . . name . . . which . . . is likely to cause confusion . . . shall be liable in a civil action . . . ." 15 U.S.C. § 1125(a)(1995). It is axiomatic that "registration does not create the underlying right in a trademark. That right, which accrues from the use of a particular name or symbol, is essentially a common law property right." Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 372 (1st Cir. 1980).

### A. Protected Rights

5

To show infringement, plaintiff must first establish that its own mark is protectible. See, e.g., Boston Beer Co. v. Slesar Bros. Co., 9 F.3d 175, 180 (1st Cir. 1993). To be eligible for protection, plaintiff's mark must be distinctive. Id. Courts have identified four categories to be considered in the evaluation of a mark's inherent distinctiveness: generic, descriptive, suggestive, and arbitrary or fanciful. Id. Generic marks are afforded no protection. Id. Arbitrary and fanciful marks are distinctive per se and, therefore, always afforded protection. Id. Descriptive marks are entitled to protection only upon a showing that they have acquired "secondary meaning." Id.

Unsurprisingly, defendant categorizes plaintiff's mark as generic. However, the facts also might support categorizing plaintiff's mark as descriptive. (See Def's. Mot. Summ. J. at 12 and Pl's. Obj. Summ. J. at 9) The difference between the descriptive category and the generic category is difficult to articulate with precision. "These categories, like the tones in a spectrum, tend to blur at the edges and merge together. The labels are more advisory than definitional, more like guidelines than pigeon holes. Not surprisingly, they are somewhat difficult to articulate and apply." Blinded Veterans Ass'n v. Blind Am.

<u>Veterans Found</u>., 872 F.2d 1035, 1039 (D.C. Cir. 1989)(quoting <u>Zatarains, Inc. v. Oak Grove Smokehouse, Inc</u>., 698 F.2d 786, 790 (5th Cir. 1983)).

The burden at trial is on the plaintiff to prove that its unregistered mark is not generic. <u>See</u>, <u>e.g</u>., <u>Reese Publishing Co. v. Hampton Int'l Communications, Inc.</u>, 620 F.2d 7 (2d Cir. 1980). And, "[e]ntry of summary judgment is mandated against a party if, after time for discovery and upon motion, the party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will <u>bear the burden of proof at trial</u>." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). (emphasis added). Accordingly, at this juncture, plaintiff must make a sufficient showing to the court that its service mark is protectible, and this showing must fairly demonstrate that it can meet its burden of production at trial.

As used in plaintiff's service mark, the term "FOOD" in "FOOD FOR PETS," is a generic term; so is the term "PETS[1]."

_____

[1]  Defendant's mark "JUST FOR PETS SUPERSTORE" also includes the generic term "PETS."  Defendant's mark was federally registered on November 5, 1991, despite use of the generic term "PETS."  The Lanham Act specifically provides that a registrable mark may contain generic and therefore unregistrable components.  15 U.S.C. § 1506.

7

However, when the words "FOR PETS" are taken together, they describe the intended consumer of the term "FOOD" (i.e., pets). In other words, the term "FOOD" is generic and the phrase "FOR PETS" is descriptive. But it is the entire mark, i.e., "FOOD FOR PETS," that plaintiff alleges is a source indicator to the relevant public, and not the terms "FOOD" and "PETS" standing alone. "Certain terms may connote more than the sum of their parts and we must take care to decide the genericness of these terms by looking to the whole." Liquid Controls Corp. v. Liquid Control Corp., 802 F.2d 934, 938 (7th Cir. 1986); see also Blinded Veterans, 872 F.2d at 1041 ("Words which could not individually become a trademark may become one when taken together"). Therefore, the court cannot determine by mere inspection whether plaintiff's service mark is descriptive or generic.

If plaintiff's mark is generic, then plaintiff's case must be dismissed. On the other hand, if plaintiff's mark is descriptive, then plaintiff need only make a sufficient showing that its mark has acquired "secondary meaning." At this juncture, it follows that plaintiff's service mark, "when scrutinized in the light most favorable to the plaintiffs, and with all reasonable inferences indulged in the plaintiff's

8

favor," must be considered to be descriptive and thus protectible upon a showing that the service mark has acquired secondary meaning. Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994), cert. denied, 115 S. Ct. 1958 (1995).

Plaintiff has set forth specific facts showing that the mark, "FOOD FOR PETS," has acquired secondary meaning and that there has been actual confusion in the marketplace. (Pl's. Obj. Mot. Summ. J., exhibits 1, 2, 5, and 9). Secondary meaning is achieved when "a significant quantity of the consuming public understand the name as referring exclusively to the appropriate party." President & Trustees of Colby College v. Colby College-N.H., 508 F.2d 804, 807 (1st Cir. 1975). Whether a mark has acquired secondary meaning is a question of fact. Boston Beer, 9 F.3d at 180. At trial, the burden of proof is on the plaintiff to show secondary meaning, and "[p]roof of secondary meaning entails vigorous evidentiary requirements." Id. at 181. Factors to be examined when determining whether a mark has acquired secondary meaning are: (1) the length and manner of its use; (2) the nature and extent of advertising and promotion of the mark; and (3) the efforts made in connection, in the public's mind, between the name or mark and a particular product or venture. Id. at 182. Ultimately, the question is whether, after examining

9

all relevant factors, it is clear that plaintiff's actions were effective in creating a distinctive meaning in the minds of prospective purchasers.

Plaintiff has offered specific facts to support its secondary meaning claim, including: (1) advertisements in print media, telephone directories, and specialized mailers; (2) a statement of advertising expenses; and (3) signed customer statements, many of which attest to acquisition of secondary meaning prior to defendant's use of its mark in New Hampshire. (Pls. Obj. Mot. Summ. J., exhibit 6). This affirmative evidence suggests that plaintiff's service mark, "FOOD FOR PETS," may be more than the sum of its parts and may have acquired a secondary meaning to the relevant public.

Each trademark case must be decided upon its particular facts, and where it seems that a trial is not likely to develop additional evidence, summary judgment is appropriate. Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 498 F. Supp. 805, 810 (D. Mass. 1980), aff'd, 675 F.2d 482 (1st Cir. 1981). At this juncture, on this record, the court cannot say that a trial is unlikely to develop additional relevant evidence. The plaintiff has made a sufficient showing that the mark, "FOOD FOR PETS," may be protectible as a descriptive service mark. The

court cautions, however, that plaintiff's burden of proof at trial will be considerably higher than it is for purposes of resolving the pending motion.

B.  Likelihood of Confusion

To show infringement, plaintiff must also prove that defendant's service mark, "JUST FOR PETS SUPERSTORE," is likely to cause confusion among prospective purchasers.  In this circuit, the factors to be considered in determining whether there is a likelihood of confusion include:

(1)  the similarity of the [service] marks;

(2)  the similarity of the [services];

(3)  the relationship between the parties' channels of trade;

(4)  the relationship between the parties' advertising;

(5)  the classes of prospective purchases;

(6)  evidence of actual confusion;

(7)  defendant's intent in adopting the mark; and

(8)  the strength of plaintiff's mark.

Boston Athletic Ass'n, 867 F.2d 29-34.  No single factor is necessarily determinative, but each must be considered.  Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 220 (1st Cir. 1989).  Each factor will be briefly examined in turn.

(1)  Similarity of the [service] marks.

The similarity of the marks factor requires consideration of the "total effect of the designation, rather than a comparison of the individual features." Volkswagenwerk AG v. Wheeler, 814 F.2d 812, 817 (1st Cir. 1987) (quoting Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981)).

Arguably, the conflicting marks appear visually and phonetically similar in that they both utilize the words "FOR PETS."  Although the defendant's mark includes the term "SUPERSTORE," that word is apparently downplayed in its promotions and advertisements in the New Hampshire market.  For example, defendant's logo, at least as described by the plaintiff, consists of the following:  "Where the words `JUST FOR PETS' appear in stylized, `reversed' print, the `SUPERSTORE' word appears in positive print, in simple block letters beneath the dominant portion of the mark . . . . Thus, when the two marks `FOOD FOR PETS' and `JUST FOR PETS SUPERSTORE' are compared side by side, their dominant portions, i.e., `FOOD FOR PETS' and `JUST FOR PETS,' are virtually identical.  (Pl's. Obj. Mot. Summ. J. at 16; see also exhibits 6 and 13).

Additionally, defendant's service mark may cause confusion because it conveys to the relevant public the same idea, meaning

12

or overall impression conveyed by plaintiff's service mark, e.g., both parties operate retail stores and sell pet supplies in addition to pet food. In fact, the mental impact of similarity in meaning may be so pervasive as to outweigh any visual or phonetic differences. J. T. McCarthy, <u>Trademarks and Unfair Competition</u> § 23.08[1] (2d ed. 1984). Accordingly, whether the conflicting marks are similar in appearance, sound, or meaning poses a genuine issue for trial.

(2) <u>Similarity of the [services].</u>

Both parties are providers of retail services including the sale of pet food, accessories, and supplies in New Hampshire. Both have registered or sought to register their respective marks on the Principal Register for identical services: "retail store services for pet food and supplies." Neither party contends that their primary markets are distinct or separate. It follows, then, that this factor militates in favor of finding a likelihood of confusion, and suggests that there is a genuine issue regarding consumer confusion for trial.

(3) <u>Relationship between the parties' channels of trade</u>.
(4) <u>Relationship between the parties' advertising</u>.

13

(5)  Classes of prospective purchasers.

Because these factors are interrelated in this case, they are considered together.  See Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 488 (1st Cir. 1981). The parties' retail services are directly competitive.  Both parties sell pet food and supplies to pet owners through retail stores in New Hampshire, and both advertise in print media, periodicals, newspapers, and phone directories.  Therefore, these three factors, taken together, militate in favor of finding a likelihood of confusion, and likely presents a genuine issue of material fact for trial.


(6)  Evidence of actual confusion.

Plaintiff has offered several instances of actual confusion. (Pl's. Obj. Mot. Summ. J., exhibits 1 and 9).  Whether there was actual confusion in these instances would also seem to present a genuine issue of material fact for trial.


(7)  Defendant's intent.

No direct evidence has been presented to suggest that defendant adopted its service mark in bad faith or with the intent to exploit plaintiff's service mark.  However, plaintiff

14

has purchased pet food from New England Serum Co., defendant's parent company, since 1990. (Deposition of Sandra A. Sanucci-Moses at 26).  Given that business relationship, there probably is a genuine issue of material fact regarding whether the defendant understood that its use of the service mark, "JUST FOR PETS SUPERSTORE," to sell pet food and supplies might well cause confusion with the same services offered by the plaintiff under its "FOOD FOR PETS" service mark.  Furthermore, there is likely a genuine dispute as to a material issue of fact regarding defendant's knowledge and intent when it acquired a business telephone number consisting of the local exchange followed by the same number, "7387" ("PETS"), used by plaintiff.

 (8) <u>Strength of plaintiff's [service] mark.</u>

 The strength of a particular mark depends on its inherent distinctiveness and its commercial strength in the marketplace. <u>Boston Athletic Ass'n</u>, 867 F.2d at 32.  A relatively strong mark is accorded a broader scope of protection than a relatively weak mark.  <u>Id</u>.  Factors deemed useful in determining the strength of a mark include: (1) the length of time a mark has been used; (2) the strength of the mark in the plaintiff's field of business; and (3) the plaintiff's actions in promoting the mark. <u>Id</u>.

Plaintiff has apparently used its mark in commerce continuously since 1978 to promote and advertise its services, including the sale of pet food, accessories, and supplies in New Hampshire. (Pl's. Mem. at 10, and exhibit 5). Plaintiff has also shown, via signed customer statements, that members of the relevant consuming public probably associate the mark, "FOOD FOR PETS," with plaintiff's retail services. Therefore, there is likely a genuine dispute as to an issue of material fact related to the strength of the plaintiff's mark.

Based on the foregoing analysis, the plaintiff has made a sufficient showing that defendant's service mark, "JUST FOR PETS SUPERSTORE," may cause confusion among the relevant consuming public. This determination follows from application of the eight factor test adopted in this circuit in light of the standard applicable in ruling on motions for summary judgment. Once again, however, the court cautions that plaintiff's burden of proof at trial will be different. Both parties would do well to explore settlement.

## IV. STATE LAW CLAIMS

### A. New Hampshire Trademark Act - (Count II)

New Hampshire has codified the Model State Trademark Act which is patterned after the Lanham Act. See N.H. Rev. Stat. Ann. ("RSA") CH. 350-A (1984).  An essential element of an action for infringement brought under the state statute is registration with the Secretary of State.  Optical Alignment Systems and Inspection Services, Inc. v. Alignment Services of North America, Inc., 909 F.Supp. 58, 61 (D.N.H. 1995).  Plaintiff asserts that it is the owner of the New Hampshire State Trademark Registration for the service mark "FOOD FOR PETS," which issued on December 30, 1994. (Pl's. Verified Complaint at 3).  Defendant did not contest plaintiff's assertion of ownership in its memorandum in support of its motion for summary judgment.[2]  In the absence of evidence to the contrary, plaintiff must be deemed to have met the essential requirement of registration.  Having met the registration requirement, and for the same reasons set forth in the court's analysis of Count I, summary judgment is also denied as to Count II.

_____

2   At this juncture, plaintiff has not offered to the court a certificate of registration from the New Hampshire Secretary of State.   Nor is it appropriate for the court to verify such registration sua sponte.   The court will, therefore, take plaintiff's assertion that their mark is registered as true.

17

B.    Unfair Competition

        1.    Common-Law Unfair Competition - (Count III)

Under New Hampshire's common law of unfair competition, "a person is liable for unfair competition if he engages in conduct which deceives the general buying public." Saloman S.A. v. Alpina Sports Corp., 737 F. Supp. 720, 722-23 (D.N.H. 1990) (quoting Jacobs v. Robitaille, 406 F. Supp. 1145, 1151 (D.N.H. 1976)).  Plaintiff alleges specific facts suggesting an ability to present evidence sufficient to meet that standard.  Moreover, defendant's memorandum does not address Count III of plaintiff's verified complaint.  Therefore, summary judgment is denied on Count III.


        2.    The Consumer Protection Act - (Count IV)

The New Hampshire Consumer Protection Act prohibits the use of an "unfair or deceptive act or practice in the conduct of any trade or commerce."  RSA § 358-A:2 ("Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services").  Additionally, the court of appeals for this circuit has pointed out that a practice is actionable under § 358-A if: (1) it is within at least the penumbra of some common-law, statutory, or other

18

established concept of unfairness, (2) it is immoral, unethical, oppressive, or unscrupulous, or (3) it causes substantial injury to consumers. Chroniak v. Golden Inv. Corp., 983 F.2d 1140, 1146 (1st Cir. 1993) (quotation marks and emphasis omitted) (borrowing this standard from cases arising under the Massachusetts Consumer Protection Act, Mass. Gen.L. Ch. 93A). The framework outlined in Chroniak is applicable to cases arising from trademark violations. Pep Boys v. Aranosian, FED. R. CIV. P. -94-354-M (D.N.H. Nov. 30, 1995). In this case, defendant's alleged conduct likely gives rise to a genuine issues of material fact regarding likelihood of confusion under Lanham Act standards, and under RSA 358-A:2. Even if defendant's alleged conduct did not constitute a violation of the explicit terms of section 358-A:2, a violation of the Lanham Act would also constitute "unfair" practices under section 358-A:2 because such conduct would fall "within at least the penumbra of some common-law, statutory, or other established concept of unfairness." Chroniak, 983 F.2d at 1146 (emphasis added). Therefore, summary judgment is also denied as to Count IV.

## V.  CONCLUSION

19

For the foregoing reasons, defendant's motion for summary judgment is denied on Counts I-IV.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 13, 1996

cc:  Robert J. Moses, Esq.
     Irvin D. Gordon, Esq.
     Victor H. Polk, Jr., Esq.