**VOLKSWAGENWERK
AKTIENGESELLSCHAFT,
Plaintiff, Appellee,**

v.

**Kenneth G. WHEELER, et al.,
Defendants, Appellants.**

No. 86–1322.

United States Court of Appeals,
First Circuit.

Argued Nov. 5, 1986.

Decided March 26, 1987.

Edward J. Collins, Wayland, Mass., for appellants.

Henry C. Dinger with whom Sibley P. Reppert, Andrew A. Rainer ánd Goodwin, Procter & Hoar, Boston, Mass., were on brief, for appellee.

Before CAMPBELL, Chief Judge, TORRUELLA, Circuit Judge, and PIERAS,* District Judge.

PIERAS, District Judge.

This is a trademark and service mark infringement case in which the appellee, Volkswagenwerk Aktiengesellschaft ("VWAG") seeks to enjoin the appellants, Kenneth G. Wheeler, Linda Wheeler, and Brian Wheeler, individually and as owners and operators of "The Beetle Barn," an automobile repair service shop, from using the marks "Beetle," "VW," and "Volkswagen" in any phrase in their advertisements, business cards, or business forms. The United States District Court for the District of Massachusetts, granted summary judgment in favor of VWAG, holding that there was no genuine issue of material fact and that VWAG was entitled to a judgment as a matter of law. The district court also granted VWAG's petition for attorney's fees. For the following reasons, we affirm the injunctive decree and reverse the award of attorney's fees.

* Of the District of Puerto Rico, sitting by designa-

## I. Background.

Beginning in the early 1950s, VWAG, the German manufacturer of Volkswagen automobiles, imported into the United States a small, distinctive, two-door sedan known as the Beetle. Since 1949, VWAG has sold more than seven million of its automobiles in the United States, including the Beetle. VWAG distributes its automobiles and auto parts only through Volkswagen of America, Inc. ("VWoA"), and licensed distributorships and retail dealers. VWAG is the sole and exclusive licensee of the registered trademarks and service marks owned by VWAG in connection with the sale, service, and repair of Volkswagen products. There are approximately thirty-eight retail dealerships of Volkswagen products located in Massachusetts. VWAG has invested considerable sums of money to advertise its products and services under the name Beetle. It has also invested substantial time, money, and effort in choosing its distributors and dealers in helping them maintain and improve the quality of services offered by them.

In 1972, Kenneth G. Wheeler and Linda Wheeler began an automobile sale, repair, and service business in Massachusetts under the name "The Beetle Barn." As well as advertising under the name the Beetle Barn, they used the phrases "Volkswagen Repair" and "VW Repair" on business cards, letterhead, and radio and newspaper advertising. The appellants were not then, and have never been affiliated with, VWAG, VWoA, or any dealer-distributor of VWoA. Kenneth Wheeler admitted he chose the name Beetle Barn because he believed the "general public" associated the word Beetle with Volkswagen, and because that name would indicate their intention to specialize in the service and repair of Volkswagen automobiles. Kenneth Wheeler owned and operated the Beetle Barn from 1972, until his death in 1981. Appellant Brian Wheeler, brother of deceased Kenneth Wheeler, in 1981 purchased the business from his brother's estate and has since owned and operated the Beetle Barn as an automobile sale, service, and repair business.

tion.

VWAG alleges trademark and service mark[1] infringement with respect to appellants' use of the following: (1) the word "Volkswagen," (2) the letters "VW," and (3) the word "Beetle." "Volkswagen," "VW," and Beetle (as a design mark in the shape of the sedan) are registered as trademarks and service marks with the Patent and Trademark Office ("PTO") under the Lanham Act, 15 U.S.C.A. § 1051 et seq. (West 1982 and Supp.1986). On June 24, 1975, VWAG sought but failed to register the word "Beetle" as a service mark for the repair of motor vehicles. During the processing of the application, the trademark examiner requested further specimens evidencing the use of the word Beetle identifying repair, reconditioning, and maintenance services. VWAG informed the examiner it believed that specimens already submitted adequately evidenced its use of the mark. VWAG's counsel advised that it was sufficiently protected by its registration of the design mark of the word Beetle, and withdrew its application for that service mark. However, in 1978, VWAG registered the word "Beetle" as a trademark for motor vehicles and as a service mark for motor vehicle retail sales.

The district court granted appellee's motion for summary judgment, and permanently enjoined appellants from further using in any phrase the marks Beetle, VW, and Volkswagen. The district court also granted plaintiff's claim for $20,979.00 in fees and $1,719.77 in expenses against all defendants, finding that they filed no response to plaintiff's request and that the request was reasonable and appropriate.

## II. The Standard for Summary Judgment.

The issue here is whether the district court erred in granting VWAG's motion for summary judgment. The standard for granting a summary judgment motion in a trademark infringement case in this circuit is well settled. *See Astra Pharmaceutical Products v. Beckman Instruments*, 718 F.2d 1201, 1204 (1st Cir.1983); *Pignons S.A. de Mecanique v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir.1981). Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Astra*, 718 F.2d at 1204; *Pignons*, 657 F.2d at 486; Fed.R.Civ.P. 56(c). A factual dispute is material if it "affects the outcome of the litigation," and genuine if manifested by "substantial" evidence "going beyond the allegations of the complaint." *Astra*, 718 F.2d at 1204 and *Pignons*, 657 F.2d at 486; *quoting Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976). In passing on a summary judgment motion, the court must view the record and draw inferences in the light most favorable to the opposing party. *Astra*, 718 F.2d at 1204; *Pignons*, 657 F.2d at 486; *Hahn*, 523 F.2d at 464.

## III. Applicable Law

■ The right to trademark and service mark rights is based on prior use, or the one who first uses the marks in connection with a peculiar line of business. *Blanchard Importing & Distrib. Co. v. Charles Gilman & Son, Inc.*, 353 F.2d 400, 401 (1st Cir.1965), *cert. denied*, 383 U.S. 968, 86 S.Ct. 1273, 16 L.Ed.2d 308 (1966). Trademark rights do not generally arise from registration. "[R]egistration does not

---

**1.** We refer to both trademarks and service marks, though they are actually distinct. A trademark is defined as "any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify and distinguish his goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C.A. § 1127 (West Supp.1986).

On the other hand, a service mark is defined as "a mark used in the sale or advertising of services to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that service is unknown." *Id.* We may refer to them collectively as "marks," which include both trademarks and service marks. 15 U.S.C.A. § 1127 (1982).

create the underlying right in a trademark. That right which accrues from the use of a particular name or symbol, is essentially a common law property right." *Keebler Co. v. Rovira Bisquit Corp.*, 624 F.2d 366, 372 (1st Cir.1980), *citing Campbell Soup Co. v. Armour & Co.*, 175 F.2d 795, 796–97 (3rd Cir.), *cert. denied*, 338 U.S. 847, 70 S.Ct. 88, 94 L.Ed. 518 (1949). An essential element of a claim of trademark infringement is a likelihood of confusion among prospective purchasers of plaintiff's products and services caused by defendants' use of plaintiff's marks. *See Baker v. Simmons Co.*, 307 F.2d 458, 461 (1st Cir.1962).

■ The district court first determined that under the secondary meaning doctrine, VWAG is entitled to trademark protection for the use of the word Beetle. The secondary meaning doctrine states that

[W]ords which have a primary meaning of their own, such as bug, may by long use in connection with a particular product, come to be known by the public as specifically designating that product.

*Volkswagenwerk AG v. Rickard*, 492 F.2d 474, 477 (5th Cir.1974) (citations omitted). Secondary meaning is generally the test for determining whether the plaintiff has created a property right in the mark. It can be developed as a result of extensive advertising of a product with the mark. *Volkswagenwerk AG v. Hoffman*, 489 F.Supp. 678, 681 (D.S.C.1980); *Time, Inc. v. Life Television Corp.*, 123 F.Supp. 470, 474–75 (D.Minn.1954).

■ The establishment of secondary meaning in a word is an issue of fact. *Rickard*, 492 F.2d at 477–78. Accordingly, we must determine whether a genuine issue of fact lies regarding the establishment of a secondary meaning in the word Beetle.

"[I]t is appropriate to consider (1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between that name or mark and a particular product or venture."

*Rickard*, 492 F.2d at 478, quoting 3 Callman, Unfair Competition, Trademarks, and Monopolies, § 19.27 (4th ed. 1983). Kenneth Wheeler admitted that he chose the name Beetle Barn because he believed the general public associated the word Beetle with Volkswagen. VWAG referred to the sedan in promotional materials and in advertisements as the Beetle since 1960s, including its magazine, *The Small World,* published by VWoA for Volkswagen automobile owners in the United States, from 1962 to the present.

Appellants assert that this same promotional and advertising evidence was presented by VWAG to the PTO in the early 1970s. The PTO found the evidence sufficient to support a trade or service mark registration in the word "Beetle" for sales of the car, but the PTO asked for further evidence to support the granting of a service mark for the word "Beetle" in connection with the repair and servicing of Beetles. Thinking it had proven its case to the PTO, and that, in any event, it was sufficiently protected under its other trademarks, VWAG withdrew its PTO application for a service mark for "Beetle" with respect to repair and servicing. Appellants assert that because they service Beetles, and because the PTO did not find VWAG's evidence sufficient to show the right to a mark with respect to servicing Beetles, this shows that there is a disputed issue of material fact in this case.

However, simply because VWAG once applied for such a service mark, and after being rebuffed by the PTO, its withdrawal of the application does not, without more, give rise to dispute as to a material fact. This evidence at most shows a dispute between VWAG and the PTO examiner handling the application over the quantum of proof required. The relevance of that dispute is marginal at best. *See Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 372 (1st Cir.1980) (cancellation of a federal trademark cannot extinguish common law rights that the federal registration did not confer). Within the PTO, the voluntary withdrawal of an application has no future relevance. *See* 37 C.F.R. § 2.68 ("An application may be expressly abandoned.... The fact that an application has been ex-

pressly abandoned shall not, in any proceeding in the Patent and Trademark Office, affect any rights that the applicant may have in the mark which is the subject of the abandoned application.").

■ Appellants presented no evidence (beyond the assertion that the PTO did not grant a service mark) to show why VWAG should not get secondary meaning protection in the word "Beetle," nor did they point out specifically how VWAG's proffered evidence was insufficient or disputable. Our review of VWAG's advertising evidence shows that, indeed, in many of the examples supplied by VWAG, the word Beetle seems to be used in connection with the sales of these automobiles. However, VWAG's evidence also shows that on at least two occasions (beginning in 1968), VWAG's magazine *The Small World* used the word Beetle in connection with servicing the cars. Appellants presented no evidence to dispute VWAG's evidence on this point. Appellants provided neither the district court nor this court with any specific reasons why VWAG's evidence is insufficient to give secondary meaning protection in the word Beetle. We find that the district court's holding in the matter is clearly correct. *See e.g., Rickard,* 492 F.2d at 477 (the word "bug" acquired a secondary meaning); *Volkswagenwerk AG v. Hoffman,* 489 F.Supp. at 681–82 (same).

■ Because we have determined that the word Beetle is entitled to trademark protection, we must now address whether appellants' use of the word Beetle would cause a likelihood of confusion among prospective purchasers of VWAG's products and services. *Baker v. Simmons Co.,* 307 F.2d 458, 461 (1st Cir.1962). This Court has examined eight factors to be used as guides in assessing likelihood of confusion: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark. *Astra,* 718 F.2d at 1205; *Pignons,*

657 F.2d at 487. Examining the evidence favorable as it applies to appellants, we must determine on the whole whether there is any genuine issue as to likelihood of confusion. No one factor is necessarily determinative, but each must be considered. *Astra,* 718 F.2d at 1205, *Pignons,* 657 F.2d at 487–92. We now consider the eight factors in the order named and as applied in the instant case.

(1) The similarity of the marks.

"[S]imilarity is determined on the basis of the total effect of the designation, rather than a comparison of the individual features." *Pignons,* 657 F.2d at 487 (omitting citations). VWAG's mark "Beetle" is used in appellants' trade name the "Beetle Barn." Appellants' business cards and letterhead stated the words "Beetle Barn/Volkswagen Repair." Words may be recognized as similar because of sound, appearance, and meaning, 3 Callman § 20.-16, and a finding of similarity may be based on appearance alone. *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.,* 628 F.2d 500 (5th Cir.1980). Here, there is no question that the marks are similar in sound, appearance, and meaning.

It has been held that when one adopts a mark similar to one already in use, there is an affirmative duty to avoid any likelihood of confusion. *See AMP Inc. v. Foy,* 540 F.2d 1181, 1187 (4th Cir.1976); *Union Carbide Corp. v. Ever-Ready Inc.,* 531 F.2d 366, 382 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976); *Harold F. Ritchie, Inc. v. Cheesebrough-Ponds, Inc.,* 281 F.2d 755, 758 (2d Cir.1960). In the present case appellants presented no evidence to show that they had acted affirmatively to avoid any likelihood of confusion when they adopted the word Beetle, and began using it together with the registered trademarks VW and Volkswagen. *See Volkswagenwerk AG v. Church,* 411 F.2d 350, 352 (9th Cir.1969) (no likelihood of confusion where repair shop made "prominent use of the word 'Independent' whenever the terms 'Volkswagen' or 'VW' appeared in [its] advertising"). The best that can be said for appellants in this regard is that in their yellow pages advertisement,

appellants stated "We repair Volkswagen automobiles." Manifestly, even though appellants did not in that instance use the mark "Volkswagen" ambiguously, they likewise did not clearly distinguish the products and services of another (VWAG) from their own.

(2) The similarity of the goods.

The parties provide similar if not identical goods and services. Appellants repair, service, and occasionally sell used Volkswagen automobiles. Those services are provided by VWAG and its retail dealers, and are the sole services provided by those dealers. Under this factor, there is a strong likelihood of confusion.

(3) The relationship between the parties' channels of trade.

(4) The relationship between the parties' advertising.

(5) The classes of prospective customers.

Because these factors are interrelated in this case, they are considered together. *Astra,* 718 F.2d at 1206; *Pignons,* 657 F.2d at 488. VWoA is the exclusive manufacturer and importer of Volkswagen products in the United States, and is the sole and exclusive licensee of VWAG's registered trademark and service marks in connection with the sale, service, and repair of Volkswagen automobiles. VWAG distributes its products in the United States through VWoA and licensed distributorship and retail dealers. VWoA sublicenses VWAG's trademarks to approximately nine hundred retail dealers in the United States, of which approximately thirty-eight are located in Massachusetts. Each dealer is required to identify its business as authorized to sell, service, and repair Volkswagen products by use of VWAG's trademarks on its stationery, advertising, and promotional material.

Appellants offer and provide similar services as the retail dealers, and advertise as specializing in the repair of Volkswagen automobiles. Their business cards and letterhead read: "Beetle Barn/Volkswagen Repair." They use their trade name "Beetle Barn" in the yellow pages, on a tow truck, and on a sign on the premises. The

class of prospective customers of each party's services are the same: automobile owners, particularly owners of Volkswagen automobiles. Typically the affiliation or the nonaffiliation of an automobile repair shop with an automobile manufacturer is not obvious to the general public. Under these circumstances, the likelihood of confusion regarding affiliation is increased.

(6) Evidence of actual confusion.

■ The district court found no evidence of actual confusion. Appellants rely on the deposition testimony of Kenneth Wheeler to the effect that his customers were not confused, and that they knew he was not a VW authorized dealer. This evidence, appellants assert, shows that there is a genuine dispute as to a material fact. However, the issue here is the likelihood of confusion. A showing of actual confusion is not essential in order to find a likelihood of confusion. *Pignons,* 657 F.2d at 490; *Baker v. Simmons Co.,* 307 F.2d 458, 463 (1st Cir. 1962).

Simply because the customers with whom Mr. Wheeler spoke were not themselves confused would not prove that other customers were not confused, or that there was no likelihood of future confusion. We agree with the district court that

[c]ourts have stated that absence of actual confusion, when marks have been side by side in the same market for a substantial period of time, raises a strong presumption that there is little likelihood of confusion. *Keebler,* 624 F.2d at 377; *De-Costa v. Columbia Broadcasting System, Inc.,* 520 F.2d 499, 514 (1st Cir. 1975), *cert. denied,* 423 U.S. 1073 [96 S.Ct. 856, 47 L.Ed.2d 83] (1976). Lack of actual confusion has been held to be prejudicial, however, only when the goods or services of the parties have other substantial disparities. *Keebler,* 624 F.2d at 514. Here, no such substantial disparities exist between the services of plaintiff and defendants.

Moreover, other parts of Mr. Wheeler's testimony provide some evidence of actual confusion. He testified that some customers requested the Beetle Barn to perform Volkswagen warranty work. Requests to

have automobile warranty work performed may indicate actual confusion. *Dr. Ing. h.c.F. Porsche AG v. Zim,* 481 F.Supp. 1247, 1249 (N.D.Tex.1979).

Given the overwhelming evidence presented by the appellee on the other seven factors of the likelihood of confusion, and the lack of rebuttal evidence by appellants, we conclude that the assertion by Mr. Wheeler that his customers were not confused is insufficient to create a *genuine* dispute as to a material fact. *See Astra,* 718 F.2d at 1204; *Pignons,* 657 F.2d at 486 (dispute is genuine if manifested by substantial evidence going beyond the allegations in the complaint).

(7) Appellants' intent in adopting the mark.

Kenneth Wheeler adopted the name Beetle Barn believing the general public associates the word "Beetle" with Volkswagen products and because he believed the name would indicate the Beetle Barn specialized in the service and repair of Volkswagen automobiles. While this evidence does not indicate an intent to deceive customers of an affiliation with VWAG, it does indicate that they chose the mark not independently, but with an intent to benefit from VWAG's reputation.

(8) The strength of VWAG's mark.

■ Appellee furnished considerable evidence as to the strength of the mark "Beetle." VWAG has spent millions of dollars advertising its automobiles under the name "Beetle." It has sold over seven million automobiles in the United States, including the sedan "Beetle." The mark has been associated with the automobile in advertisements and promotional materials since 1968. VWoA began referring to the sedan as the Beetle in its magazine *The Small World.* The Beetle was distributed to customers nationwide through retail dealers. Appellants presented no evidence to show why VWAG's mark should not be considered a strong mark. "Strong" marks are accorded broader protection against infringement than are "weak" marks. *Pignons,* 657 F.2d at 492. (omitting citations).

■ Considering all the factors as a whole, and in the light most favorable to appellants, we hold that there is no genuine issue of fact as to the likelihood of confusion, and affirm the judgment of the district court granting VWAG's motion for summary judgment on this claim of trademark infringement.

■ Appellants make a separate estoppel argument. They urge that VWAG should be estopped from asserting service mark rights in the word Beetle as a service mark for repair services because it failed to register that mark with the PTO in 1975. That argument must fail for two independent reasons. First, rights to a mark do not arise out of registration, but accrue from prior use. *See Keebler Co.,* 624 F.2d at 372. The exclusive right to use a particular mark belongs to the one who first uses it in connection with a particular line of business. *Blanchard Importing,* 353 F.2d at 401. Therefore, because VWAG used the mark "Beetle" long before appellants opened the Beetle Barn, its failure to register the mark does not estop it from asserting common law service mark protection in it.

■ Second, the PTO's classifications of goods and services is for administrative convenience and does not extend an applicant's rights in that classification. 15 U.S.C.A. § 1112 (West Supp.1986). Also, as previously stated, an applicant may withdraw or abandon its application without "affect[ing] any rights that the applicant may have in the mark which is the subject of the abandoned application." 37 C.F.R. § 2.68. A refusal by the PTO to register a mark does not preclude the owner of the mark from his right to use it. *In re McGinley,* 660 F.2d 481, 484 (C.C.P.A. 1981). And as this court has held, the cancellation of a trademark registration does not extinguish common law rights that registration did not create. *Keebler Co.,* 624 F.2d at 372. A plaintiff need not rely on federal registration to establish a claim of trademark infringement. Rather, he must show that defendant's use of the mark creates a likelihood of confusion among prospective customers. Because

VWAG first used the mark and established a likelihood of confusion, its failure to register the mark is not relevant as a matter of law.

### IV. The "Volkswagen" and "VW" Marks.

■ Under the Lanham Act, the right to use a registered mark generally becomes incontestable after five consecutive years of continuous use subsequent to registration. 15 U.S.C. §§ 1065, 1115(b). When the right to use the mark has become incontestable, the infringement claim may be based on the registration, which is deemed conclusive evidence of the registrant's exclusive right to use the mark. 15 U.S.C. § 1115(b); *see also Union Carbide Corp. v. Ever-Ready Inc.,* 531 F.2d 366 (7th Cir.), *cert. denied* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976).

■ The district court held under the statutory requirements for incontestability that VWAG has the exclusive and incontestable right to use the marks "Volkswagen" and "VW" for auto repair services. VWAG registered those service marks in 1966, the registration is still in full force and effect, and VWAG has used those marks continuously since the date of registration. Appellants have not argued either below or on appeal that any of the defenses available in 15 U.S.C. § 1115(b) are applicable to lessen the evidentiary value of the registration. Moreover, even in the absence of federal registration, VWAG's use of the service marks created common law rights. Our holding here that appellants are guilty of service mark infringement is supported by other courts who have found other automobile service shops guilty of trademark infringement for using the phrases "Volkswagen Repair" and "VW Repair." *See, e.g., Volkswagenwerk AG v. Smith,* 471 F.Supp. 385, 389 (D.N.M.1979).

Finally, this court is mindful of the importance of and the need to protect trademarks from infringement. The use of trademarks is designed to alert the consuming public as to the origin and source of the products. It allows the public to depend on the constancy of the quality of the products it seeks. The legislative history of the Lanham Act shows that Congress intended that "trade-marks should receive nationally the greatest protection that can be given them." Sen.Rep. No. 1333, 79th Cong., 2d Sess. 5 *reprinted in* 1946 U.S. Code Cong.Serv. 1274, 1277. Our ruling today is in the accord with that intention.

### V. Attorney's Fees.

Appellants also appeal from an award of $26,979.00 in attorney's fees to VWAG. Section 35 of the Lanham Act was amended effective January 2, 1975, to provide that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Pub.L. No. 93–600, § 3, 88 Stat. 1955, *codified at* 15 U.S.C. § 1117 (West 1982 and Supp.1986). Previous to this amendment, a prevailing party could not recover attorney's fees in a trademark infringement case. *See Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967) (striking down attorney fee awards to prevailing parties in trademark cases).

Appellants failed to submit an opposition to VWAG's request for fees. The district court awarded the entirety of the fee application to VWAG, finding it to be reasonable and appropriate, but did not mention section 35, nor that this was an exceptional case. VWAG contends that appellants may not for the first time on appeal challenge the award. *Herbert v. Wicklund,* 744 F.2d 218 (1st Cir.1984).

■ The usual rule barring appeal of issues not advanced in the district court is not inflexible. An appellate court is not precluded from considering an issue not properly raised below where "injustice might otherwise result." *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826, 837 (1976). In *Herbert v. Wicklund, supra,* we affirmed the award of $1,400.00 in attorney's fees to a prevailing party in a copyright infringement action, where the losing party filed no response to the prevailing party's motion and affidavit for attorney's fees. However, because we believe the district court did not reach the merits of the issue under

Section 35, and because of the size of the award against a sole proprietorship, we feel manifest injustice might result in the absence of our review. *See French v. Estelle,* 696 F.2d 318 (5th Cir.1982).

 Amended Section 35 does not define "exceptional cases." Legislative history, though sparse, indicates that attorney's fees may be appropriate "where justified by equitable considerations," including those where the acts of infringement were "malicious," "fraudulent," "deliberate," or "willful." S.Rep. No. 1400, 93rd Cong., 2d Sess. 5, *reprinted in* 1974 U.S.Code Cong. & Admin.News 7132–33. Under the statute, the award of attorney's fees is left to the discretion of the district court, *id.* at 7136, and it may as well award attorney's fees to a prevailing defendant. *Id.* The standard of review of an award of attorney's fees is abuse of discretion. *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001 (9th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986).

 We find that the district court must be reversed here under that standard. VWAG neither alleged acts of infringement that would rise to the level of an exceptional case, nor did it plead attorney's fees in its complaint. Moreover, at the time appellants chose the trade name, the Beetle Barn, VWAG had neither registered the word Beetle nor the design mark Beetle. They were therefore not put on statutory constructive notice of VWAG's claim of ownership of those marks.

Additionally, the defendants are owners of a small automobile repair shop, attracting only a local market. VWAG, on the other hand, maintains a large, national market. With thirty-eight Volkswagen dealers in Massachusetts, and 900 nationally, defendants were taking a small portion of the Volkswagen market. We may take into account these equitable considerations on the merits. Under these circumstances, we cannot sustain the award under the statutory standard.

*Affirmed in part, reversed in part.*