Mongan v. O'Neill                    CV-01-135-M    07/24/02
                UNITED STATES DISTRICT COURT

                  DISTRICT OF NEW HAMPSHIRE


Marie Mongan,
      Plaintiff

      v.                                Civil No. 01-135-M
                                        Opinion No. 2002 DNH 139
Michelle Leclaire O'Neill,
      Defendant


                         **O R D E R**


      Marie Mongan ("Mongan"), owner of the federally registered

service mark HypnoBirthing (stylized), has sued fellow childbirth

educator Michelle Leclaire O'Neill ("O'Neill") in six counts,

alleging: infringement of the registered service mark

HypnoBirthing (stylized), under 15 U.S.C. § 1114 (Count I);

infringement of the common law trademark HYPNOBIRTHING

PRACTITIONER, under 15 U.S.C. § 1125(a) (Count II); unfair

competition, based upon use of the marks HYPNOBIRTHING and THE

HYPNOBIRTHING METHOD, under 15 U.S.C. § 1125(a) (Count III);

false designation of origin, based upon the use of both marks,

under 15 U.S.C. § 1125(a) (Count IV); unfair competition, under

the common law of California and the California Professional Code

(Count V); and tortious interference with a contractual

relationship (Count VI).  Before the court is plaintiff's motion for summary judgment on Counts I-V.  Defendant objects.  For the reasons given below, plaintiff's motion for summary judgment is denied.


**Summary Judgment Standard**

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  "To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trialworthy issue as to any material fact."  Perez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001) (citing Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000)).

> Not every factual dispute is sufficient to thwart
> summary judgment; the contested fact must be "material"
> and the dispute over it must be "genuine."  In this
> regard, "material" means that a contested fact has the
> potential to change the outcome of the suit under the
> governing law if the dispute over it is resolved
> favorably to the nonmovant.  By like token, "genuine"
> means that the evidence about the fact is such that a

reasonable jury could resolve the point in favor of the nonmoving party.

Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).

In defending against a motion for summary judgment, "[t]he non-movant may not rely on allegations in its pleadings, but must set forth specific facts indicating a genuine issue for trial." Geffon v. Micrion Corp., 249 F.3d 29, 34 (1st Cir. 2001) (citing Lucia v. Prospect St. High Income Portfolio, Inc., 36 F.3d 170, 174 (1st Cir. 1994)). When ruling upon a party's motion for summary judgment, the court must "scrutinize the summary judgment record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Navarro, 261 F.3d at 94 (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).

## Background

Mongan and O'Neill are childbirth educators who teach birthing methods that employ hypnosis.[1]  It would appear beyond dispute that the basic concept of pain reduction in childbirth through natural relaxation techniques may be traced at least as far back as the work of English obstetrician Grantley Dick-Read in the 1930s, as reported in his influential book Childbirth Without Fear (1930).  Both Mongan and O'Neill have taught the use of hypnosis as a means of achieving relaxation during childbirth since the late 1980s.  Both have published books and other educational materials on the subject of hypnosis in childbirth,[2] both have used the term "hypnobirthing" in their published materials,[3]

_____

[1] While not particularly relevant, it is of passing interest that a July 15, 2002, visit to amazon.com disclosed that the page advertizing Mongan's book, HypnoBirthing: A Celebration of Life (1998), also lists a book written by O'Neill, Better Birthing Through Hypnosis (2001), as a "great buy," and suggests that shoppers purchase both books.  The amazon.com page advertizing O'Neill's book cross-references Mongan's book in the same way.

[2] O'Neill contends that Mongan's educational program covers only one of the ten parts that make up the entire "Leclaire Method," but the relationship between the content of the two programs is not material to the question currently before the court.

[3] O'Neill, however, has voluntarily stopped using the term "hypnobirthing" (probably unnecessarily) until this litigation is resolved.

and both claim to have invented the technique.[4]  In addition, Mongan operates an enterprise called the "HypnoBirthing Institute," which certifies hypnobirthing instructors.

_____

[4] An April 9, 2001, printout of part of O'Neill's web site, submitted by Mongan in support of her motion for summary judgment, contains the following questions and answers:

> **Who developed Hypnobirthing:**
> Hypnobirthing is the only childbirth [e]ducation program developed by a woman, Michelle Leclaire O'Neill, PhD. R.N.  Dr. O'Neil[l] developed this method in 1987 and due to the Dateline Hypnosis Pregnancy Program more people than ever are now aware of her effective method.
>
> **What is Hypnobirthing?**
> Hypnobirthing the Leclaire method is a program that prepares a mother during her pregnancy for a totally relaxed birth.

(Pl.'s Mot. Summ. J., Ex. B.F.)  By contrast, Mongan's own web site, hypnobirthing.com, contains a link labeled "who started it," which leads to a page titled "Founder of HypnoBirthing®", which claims, in relevant part:

> Mickey [a/k/a Marie Mongan] is the mother of four children, all born in the late 50s and early 60s.  She experienced all four labors using the techniques of Dr. Grantly Dick-Read, the pioneer in the field of natural childbirth, upon whose work Mickey has based HypnoBirthing®.  Two of her birthings were entirely free of anesthesia at a time when it was unheard of. Her book, HypnoBirthing® – A Celebration of Life, was written in 1989; the expanded version is now available.

While both women claim to have developed the technique of hypnobirthing, O'Neill also claims to have coined the term "hypnobirthing."

On August 1, 2000, the United States Patent and Trademark Office ("USPTO") issued Mongan a service mark registration for the mark HypnoBirthing (stylized)[5] (Reg. No. 2,372,277). The service for which the mark was registered is described as "[e]ducation in the field of childbirth rendered through correspondence courses, workshops, and seminars." (Mongan also abandoned an application for trademark rights in HypnoBirthing (stylized) for use on "[p]rinted course books and instructional, educational, and teaching materials in the field of childbirth.") On July 3, 2001, a cancellation proceeding with respect to the HypnoBirthing (stylized) mark was filed, by O'Neill, with the Trademark Trial and Appeal Board. That proceeding is still pending. Mongan also claims to have common law trademark rights in the mark HYPNOBIRTHING PRACTITIONER.[6]

---

[5] It is somewhat unclear precisely what Mongan claims as her mark. As depicted in the Official Gazette of the USPTO, the stylized drawing of the mark consists of the word "HypnoBirthing" in a standard typeface with serifs. On her web site, hypnobirthing.com, Mongan uses the word "HypnoBirthing" in several different typefaces, but always followed by the ® symbol. Thus, it is unclear whether the stylization consists of both the typeface and the use of the capital H and B, or simply refers to the use of the two capital letters.

[6] Along with her trademark, Mongan holds copyrights on: (1) HYPNOBirthing: a celebration of life: a guide to achieving an easier, more comfortable birthing in the way that most mirrors nature (TX-3-443-664, created in 1992, published Aug. 14, 1992,

On January 16, 2001, O'Neill filed an application for registration of the service mark The Hypnobirthing Method (stylized). The service for which O'Neill seeks the mark is described as "TRAINING classes for professionals and CHILDBIRTH Classes for PREGNANT couples." O'Neill's application was assigned to an examining attorney on December 13, 2001, and is still pending.

## Discussion

Mongan moves for summary judgment on counts I-V, arguing that the undisputed factual record demonstrates that: (1) she first used the HYPNOBIRTHING mark in interstate commerce more than two years before O'Neill claims to have used the marks HYPNOBIRTHING or THE HYPNOBIRTHING METHOD in interstate commerce; (2) all eight factors of the test for likelihood of confusion weigh strongly in her favor. O'Neill, who is appearing pro se, counters on several grounds, the most important being her assertion that "hypnobirthing" is a generic term not eligible for trademark protection.

---

and registered Nov. 12, 1992); and (2) <u>Hypnobirthing practitioner certification syllabus</u> (TX-5-252-727, created in 1991, published Aug. 14, 1991, and registered May 26, 2000).

Because Mongan registered HypnoBirthing (stylized) less than five years ago, the registration is not yet incontestable. See 15 U.S.C. § 1065 (right to use a registered mark generally becomes incontestable after five consecutive years of continuous use after registration). Consequently, the mark's validity is open to challenge. See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 196 (1985) (presumption of validity created by registration is rebuttable until right to use the mark becomes incontestable). By contending that Mongan's mark is generic, O'Neill has raised two genuine issues of material fact that preclude summary judgment.

The first issue raised by O'Neill's objection to Mongan's motion for summary judgment is the distinctiveness of Mongan's marks. The proper placement of those marks "along the spectrum of 'distinctiveness,'" Boston Beer Co. v. Slesar Bros. Brewing Co., 9 F.3d 175, 180 (1st Cir. 1993), is a question of fact, id. (citing Wiley v. Am. Greetings Corp., 762 F.2d 139, 141 (1st Cir. 1985)), and one central to determining whether and under what circumstances a mark is entitled to protection.

> At one end of the [distinctiveness] spectrum there are generic terms that have passed into common usage to identify a product, such as aspirin, and can never be protected. In the middle there are so-called descriptive terms, such as a geographical term, which can be protected, but only if it has acquired "secondary meaning" by which consumers associate it with a particular producer or source. At the other end of the spectrum, there are suggestive, arbitrary and fanciful terms that can be protected without proof of secondary meaning. These terms are considered "inherently distinctive."

Boston Beer Co., 9 F.3d at 180 (citations omitted).

The question of distinctiveness is not yet ripe for decision, but a full adjudication of Mongan's claims will require resolution of that issue. Based upon the summary judgment record, it appears highly unlikely that Mongan could demonstrate that either HypnoBirthing (stylized) or HYPNOBIRTHING PRACTITIONER is a fanciful, arbitrary, or suggestive mark. And while a colorable argument could be made that HypnoBirthing (stylized), as a service mark for educational services, might fairly be called descriptive, it is not at all clear that Mongan could prove that HYPNOBIRTHING PRACTITIONER is anything other than a generic term.

Assuming Mongan is able to prove that her registered mark, HypnoBirthing (stylized), is a descriptive mark rather than a generic term, she would then have to address the issue of secondary meaning.  "[W]hether a mark has acquired secondary meaning is also a question of fact."  Boston Beer Co., 9 F.3d at 180 (citing Volkswagenwerk AG v. Wheeler, 814 F.2d 812, 816 (1st Cir. 1987)).  "Moreover, it is the party seeking protection of a mark who bears the burden of proving that secondary meaning has attached."  Boston Beer Co., 9 F.3d at 181 (citing Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1041 (2d Cir. 1992); Blinded Vets. Ass'n v. Blinded Am. Vets. Found., 872 F.2d 1035, 1041 (D.C. Cir. 1989)).  And the burden of proof on secondary meaning is high; "[p]roof of secondary meaning entails vigorous evidentiary requirements."  Boston Beer Co., 9 F.3d at 181 (quoting Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 125 (4th Cir. 1990); citing Thompson Med. Co. v. Pfizer Inc., 753 F.2d 208, 217 (2d Cir. 1985); Bank of Tex. v. Commerce Southwest, Inc., 741 F.2d 785, 787 (5th Cir. 1984)).  As for the kind of evidence necessary to meet those vigorous evidentiary requirements, "[t]he only direct evidence probative of secondary meaning is consumer surveys and testimony by individual

10

consumers.  Although survey evidence is not required, it is a valuable method of showing secondary meaning."  <u>Yankee Candle Co. v. Bridgewater Candle Co.</u>, 259 F.3d 25, 43 (1st Cir. 2001) (citations and internal quotation marks omitted).

Because O'Neill has effectively raised the issue of distinctiveness, and because the court cannot conclude, as a matter of law, that Mongan's marks are fanciful, arbitrary, or suggestive and cannot conclude, as a matter of law, that those marks have acquired secondary meaning, summary judgment for Mongan is inappropriate.

As this litigation progresses, Mongan will bear the burden of proving that the marks on which she bases her infringement claims are distinctive, either because they are fanciful, arbitrary, or suggestive – which seems highly unlikely – or because they are descriptive marks that have acquired secondary meaning.  Under any circumstances, proof of secondary meaning is an arduous legal undertaking, and on this summary judgment record, Mongan's prospects do not appear promising.  Furthermore, Mongan should not overlook the court's authority, under 15 U.S.C.

11

§ 1119, to cancel a registration if, for example, the owner of a descriptive mark is unable to prove secondary meaning.

Finally, even if Mongan is able to prove ownership of a valid descriptive mark, i.e., one with secondary meaning, she may not win all that much in the way of protection, due to the rule that "'[s]trong marks are accorded broader protection against infringement than are 'weak' marks." Wheeler, 814 F.2d at 819 (citing Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 492 (1st Cir. 1981)). Given the relatively brief history of hypnobirthing as a technique and use of the term "hypnobirthing" by both parties prior to Mongan's registration, Mongan appears to face an uphill battle in trying to prove that her marks are strong enough to merit broad protection. See Star Fin. Servs., Inc. v. AASTAR Mort. Corp., 89 F.3d 5, 11 (1st Cir. 1996) ("In assessing a mark's strength, the trier of fact considers evidence of the length of time the mark has been used, its renown in the plaintiff's field of business, and the plaintiff's actions to promote the mark.") (citing Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542, 547 (1st Cir. 1995)).

12

In an effort to provide what might prove to be helpful guidance to the parties, the court notes that their dispute appears to be much less a trademark case than a dispute over who was the "true originator" of an increasingly popular technique for employing hypnosis as an aid to childbirth. The idea of using hypnosis as an aid to childbirth is, of course, not legally protected intellectual property. The words or symbols one might use to attract clients to a particular hypnobirthing business enterprise may well be protectable service marks. And, the unique expression one uses in conveying the idea of hypnobirthing in a book or audiotape may be subject to copyright protection. But it would seem, legally, that anyone who teaches birthing methods that employ hypnosis to aid in pain reduction has the right to call the process "hypnobirthing."

Obviously, it would be unlawful for a person not trained by Mongan to claim certification from Mongan's "HypnoBirthing Institute" – Mongan has the right to prevent others from passing themselves off as trained by her when they have not been. But it is far less clear that Mongan has the right to corner the market on use of the term "hypnobirthing" as a description of methods or

13

techniques for employing hypnosis in childbirth.  Linguistically, "hypnobirthing" is an easily understood amalgam of two common English words, and it is seldom – if ever – appropriate for intellectual property law to make such words unavailable for all to use.

Continued litigation of this case will certainly be expensive, given the complexity of the issues to be addressed, the burdensome requirements for proving secondary meaning, and the difficulty of proving the strength of the marks, in light of the pervasiveness of the term "hypnobirthing" in the popular press and elsewhere.  Continued litigation might also prove unexpectedly costly in other ways, especially to Mongan.  It is no sure thing that her registration will withstand judicial scrutiny into the distinctiveness of her marks based upon secondary meaning.  Mongan could easily emerge from this suit with the proverbial hole in the foot – holding less than she currently thinks she holds.  In short, continued litigation would appear to be an especially unsuitable way to resolve the dispute that is actually at the heart of this case.  Nothing in the record suggests that O'Neill has used, is using, or intends to

14

use the mark HypnoBirthing (stylized), and much in the record suggests that Mongan's property rights in the mark are suspect. It may be time for informed and self-interested reflection.

## Conclusion

For the reasons given above, Mongan's motion for summary judgment (document no. 15) is denied, and the case will remain on the docket.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 24, 2002

cc:  Ralph F. Holmes, Esq.
     Michelle L. O'Neill