**BOSTON DUCK TOURS, LP, Plaintiff,**

v.

**SUPER DUCK TOURS, LLC, Defendant.**

**Civ. A. No. 07–11222–NMG.**

United States District Court, D. Massachusetts.

July 13, 2007.

Joshua M. Dalton, Bingham McCutchen LLP, Julia Huston, Courtney M. Quish, Kerry L. Timbers, Bromberg & Sunstein LLP, Boston, MA, for Defendant.

Peter J. Karol, Bromberg & Sunstein LLP, Victor H. Polk, Jr., Bingham McCutchen LLP, Jonathan S. Sales, Law Office of Jonathan S. Sales, Boston, MA, for Plaintiff.

## MEMORANDUM & ORDER

GORTON, District Judge.

The underlying case involves allegations of trademark infringement and tortious interference with advantageous business relationships. Currently pending before the Court is a motion of the plaintiff for entry of a preliminary injunction against the defendant. For the following reasons, the motion will be allowed, in part, and denied, in part.

### I. Background

On July 2, 2007, the plaintiff, Boston Duck Tours, LP ("Boston Duck Tours"), filed a complaint and moved the Court to enter a temporary restraining order and a preliminary injunction against the defendant, Super Duck Tours, LLC ("Super Duck Tours"). That same day, the Court denied the motion for a temporary restraining order and scheduled a hearing on

the preliminary injunction. The parties appeared before the Court on July 11, 2007 for a contested hearing on that motion.

Since 1994, Boston Duck Tours has provided sightseeing services in Boston, Massachusetts and on the Charles River using brightly colored amphibious World War II vehicles, once designated as DUKWs. The company owns a federal registration for the use of its "Boston Duck Tours" mark and logo which depicts a cartoon duck wearing a camouflage hat, splashing in the water. For the past thirteen years, the company has enjoyed remarkable success, serving hundreds of thousands of customers and receiving national and international press coverage in a variety of travel magazines. During that time, the company secured its connection to the City of Boston by virtue of its prominent participation in World Series and Super Bowl parades.

Super Duck Tours provides sightseeing tours in bright yellow amphibious vehicles called Hydra–Terras, a more modern amphibious vehicle than the DUKWs. The company originally provided land-water sightseeing tours in Portland, Maine in 2001. After two years in Portland, Super Duck Tours expanded into the larger Boston market by purchasing New England Tours, a company which already held the required Hackney permits and licenses. In late 2006 and 2007, Super Duck Tours made substantial investments in preparation for its operations in Boston. In May, 2007, it entered into an agreement with Discover Boston, an independent company, which agreed to sell Super Duck Tours tickets for a commission. On May 21, 2007, Super Duck Tours began operating its own sightseeing tours in Boston.

Plaintiff Boston Duck Tours filed a complaint against Super Duck Tours on July 2, 2007, alleging trademark infringement and tortious interference with business relationships. With respect to the tortious interference claim, the plaintiff alleges that the defendant has made false statements regarding the plaintiff's Boston Duck Tours company. The plaintiff moves the Court to enjoin the defendant from 1) using the name "Super Duck Tours" and the cartoon duck in association with its sightseeing business and 2) making false statements regarding the Boston Duck Tours business.

## II. *Legal Analysis*

### A. Legal Standard

■ To obtain preliminary injunctive relief under Fed.R.Civ.P. 65, a movant must demonstrate

> (1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest.

*Nieves–Marquez v. Puerto Rico,* 353 F.3d 108, 120 (1st Cir.2003) (citation omitted). Likelihood of success on the merits is the veritable *sine qua non* of the court's inquiry. *See Philip Morris, Inc. v. Harshbarger,* 159 F.3d 670, 674 (1st Cir.1998). The importance of that factor is heightened in trademark cases because the other three factors are largely dependent upon establishing proof of infringement. *Borinquen Biscuit Corp. v. M.V. Trading Corp.,* 443 F.3d 112, 115 (1st Cir.2006)(citing cases). If the movant meets its burden with respect to each of the foregoing elements, the Court may only grant a preliminary injunction upon the posting of security by the movant. *See* Fed.R.Civ.P. 65(c).

### B. Trademark Infringement Claim

#### 1. Likelihood of Success on the Merits

■ In order to succeed in a trademark case, a plaintiff carries the burden of dem-

onstrating that 1) it is the owner of a distinctive mark entitled to trademark protection and 2) the defendant's use of a similar mark is likely to confuse the consumer. *See DeCosta v. Viacom Int'l Inc.*, 981 F.2d 602, 605 (1st Cir.1992). In this case, there is no challenge to the plaintiff's ownership of a protected mark. Rather, the parties focus their attention on whether the defendant's allegedly infringing mark is likely to cause consumer confusion.

■ In determining whether a mark presents a likelihood of confusion with another mark, the Court is compelled to consider the following eight factors:

(1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark.

*Borinquen Biscuit*, 443 F.3d at 120 (citing *Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1205 (1st Cir.1983)). While the Court is not limited to the consideration of only those factors, it must, nevertheless, consider each one of them. *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st Cir. 1987).

### a. Similarity of Marks

■ Similarity can be analyzed through an inquiry into the sight, sound and meaning of the two marks. *Id.* at 817. Ultimately, the similarity should be based on "the total effect of the designation, rather than a comparison of individual features." *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir.1981)(quoting *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 444 (9th Cir.1980)).

■ Despite the defendant's argument that the particular features of the cartoon duck logos of the parties are different and that the "Super" and "Boston" portions of the trademarks are dissimilar, the Court is unconvinced. The total effect of the two marks, including the logos, is more than sufficient to show similarity: both companies employ a three-word trademark comprised of a two-syllable word preceding the phrase "Duck Tours" as well as a logo with a single cartoon duck splashing in the water. The slight differences between the two marks (e.g. the hat versus the cape worn by the respective ducks) are insufficient to overcome the striking similarity between the two. The Court finds that Boston Duck Tours is likely to succeed at trial in demonstrating a strong similarity between its mark and that of Super Duck Tours.

### b. Similarity of Goods or Services

■■ The parties offer virtually identical services: sightseeing tours of the greater Boston area which are distinctive for their usage of vehicles that travel on land and water. In consideration of this factor, slight differences are insufficient to tip the scale in favor of the defendant:

[E]ven if the [parties] did not offer precisely identical services, the "similarity of services" factor would weigh in the plaintiff's favor, so long as the plaintiff could show that many of the services of the two entities are similar or identical.

*Boustany v. Boston Dental Group, Inc.*, 42 F.Supp.2d 100, 108 (D.Mass.1999)(citing *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1010 (D.Mass.1988)). While the defendant argues that there are some differences between the tours, namely that only the Super Duck Tours has Coast Guard approval

to navigate around Boston Harbor, the Court finds that difference (and others regarding the location of operations in Boston) to be negligible given the marked similarities between the parties' unique land-water sightseeing tours of the greater Boston area. The Court concludes, therefore, that the plaintiff is likely to succeed at trial in establishing substantial similarity between the services provided.

### c. Relationship Between Channels of Trade, Advertising and Prospective Purchasers

These factors are generally considered together. *See Beacon Mut. Ins. Co. v. OneBeacon Ins. Group,* 376 F.3d 8, 19 (1st Cir.2004). Here, neither of the parties dispute that both companies share channels of trade (in this case, both literally and figuratively) and advertising in their attempts to attract Boston tourists.

### d. Evidence of Actual Confusion

 In order to prevail, a plaintiff does not have to show actual confusion; mere likelihood of confusion is sufficient. *Volkswagenwerk,* 814 F.2d at 818. Nevertheless, evidence of actual confusion is, not surprisingly, a strong indicator of likelihood of confusion:

Actual confusion is often taken to be the most persuasive possible evidence that there is a likelihood of confusion. Actual confusion is such persuasive evidence of the likelihood of confusion that even a minimal demonstration of actual confusion may be significant.

*Boustany,* 42 F.Supp.2d at 110 (quoting *Copy Cop Inc. v. Task Printing, Inc.,* 908 F.Supp. 37, 45 (D.Mass.1995)).

 In this case, the plaintiff identifies at least 30 instances of actual confusion involving customers who believed that the two companies were one and the same. The plaintiff argues that the fact that so many reported cases of actual confusion have arisen in less than two months supports Boston Duck Tours' claim that the marks are confusingly similar and deceptive to consumers.

In response, the defendant attempts to challenge a handful of those instances to no avail. Even if some of the evidence is based on hearsay, the plaintiff has successfully demonstrated that there has been a sufficient number of complaints actually documenting confusion; a number that is growing daily.

The defendant also contends that the evidence of confusion is not as a result of the trademarks but simply because there is a new competitor in town. At the hearing, the plaintiff responded by arguing persuasively that the confusion would not likely have resulted if the defendant's trademark was not so similar to Boston Duck Tours, e.g. Turtle Tours. Furthermore, the litany of complaints alleged in the plaintiff's affidavits indicates that it is the confusing similarity of the parties' trademarks that is the problem here. The Court agrees, therefore, with the plaintiff that it is likely to succeed at trial in demonstrating evidence of actual confusion.

### e. Defendant's Intent to Trade off of Plaintiff's Goodwill

 The plaintiff asserts that because the defendant had actual (as well as constructive) notice of Boston Duck Tours' trademark and related goodwill, the defendant's intent is necessarily suspect. The defendant replies that the plaintiff does not have a shred of evidence supporting any bad faith on its part in selecting "Super Duck Tours" as its mark. Rather, the defendant maintains that it chose the name six years ago in good faith.

Despite the defendant's arguments that there is no evidence of bad faith, the First Circuit has held that:

Evidence of bad intent ... while potentially probative of likelihood of confusion, is simply not required in a trademark infringement case; moreover "a finding of good faith is no answer if likelihood of confusion is otherwise established".

*Star Financial Services, Inc. v. Aastar Mortgage Corp.*, 89 F.3d 5, 11 (1st Cir.1996)(quoting *President and Trustees of Colby College v. Colby College–New Hampshire*, 508 F.2d 804, 811–12 (1st Cir. 1975)). In this case, it is undisputed that Super Duck Tours was aware of Boston Duck Tours' success in the Boston area. The Court concludes that Super Duck Tours' intent is, at least, suspect. It knowingly and intentionally entered the Boston market offering a service, mark and logo nearly identical to that of Boston Duck Tours, an established and successful enterprise.

**f. Strength of the Mark**

 The final factor to be considered, the strength of the plaintiff's mark, is the cornerstone of the defendant's case. At the hearing, the defendant conceded that its argument hinges on the theory that the phrase "duck tours" is a generic term and thus, not protectable regardless of any actual confusion or similarity of trademarks. As expected, the plaintiff vigorously disagrees. The First Circuit classifies marks along a continuum of increasing distinctiveness: 1) generic, 2) descriptive, 3) suggestive, 4) arbitrary and 5) fanciful. *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 39 (1st Cir.1998). The latter three are deemed to be inherently distinctive and entitled to protection. *Id.* While a generic mark is not entitled to protection, a descriptive mark can be upon a showing of secondary meaning. *Id.* Sec-

ondary meaning can be established by evidence of several factors, including: 1) long and exclusive use, 2) size and prominence of the plaintiff's enterprise, 3) extensive advertising and promotional efforts and 4) direct evidence of secondary meaning among the service's public. *See Volkswagenwerk*, 814 F.2d at 816. Contrary to the defendant's claim that "duck tours" is generic and, thus, not protectable, the plaintiff asserts that it is, at least, descriptive, if not suggestive or arbitrary.

The defendant contends that "duck tours" is a generic term identifying a particular kind of amphibious sightseeing tour. As further evidence of the ubiquity of the term, the defendant presents evidence of numerous other regional "duck tours" across the country as well as 13 different "duck tours" trademarked with the Patent and Trademark Office. In support of its argument, the defendant also directs the Court's attention to cases in which phrases such as "wool felt" and "crab house" were similarly held to be generic and thus not infringed. *See Maine Ave. Seafood, Inc. v. The Crab House, Inc.*, No. 97–640, 1998 U.S. Dist. LEXIS 23144 (D.Md. Mar. 30, 1998); *Nat'l Nonwovens, Inc. v. Consumer Prod. Enterprises, Inc.*, 397 F.Supp.2d 245 (D.Mass. 2005).

 Generic terms are those which refer to the "genus of which the particular product is a species". *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992)(quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)). Thus, generic terms refer to a particular category of a service without any specific distinction as to that specific product. In this case, there is no dispute that the word "tours" which is found in both trademarks, is a generic

term. It refers to a category of services, generally. The issue is whether "Duck Tours" is similarly generic.

■ The Court concludes that it is not. Unlike the examples of "wool felt" and "crab house" identified by the defendant, "duck tours" does not clearly refer to a broad, general category of services. Rather, the word "duck" is a play on the World War II amphibious vehicles, DUKWs, which were the distinctive predecessors of the vehicles used by the plaintiff, Boston Duck Tours. The tour itself does not involve ducks, as creatures, in any way. Contrary to what the name "duck tours" may imply, the tour does not involve either duck watching or duck hunting. Thus, unlike "wool felt" or "crab house" in which the generic terms referred exactly to what the public would assume the words to mean, the link here is more attenuated.[1]

Although the Court is not convinced that "duck tours" is a very strong mark it is, at least, not a generic mark. The Court declines to decide at this time whether it is descriptive, suggestive or arbitrary but even if it is a weak descriptive mark, there is persuasive evidence that it has acquired a secondary meaning in the Boston area during the past 13 years.

## 2. Irreparable Harm, Balancing of Harms, Public Interest

■ Under First Circuit law, irreparable harm may be shown even in the absence of actual injury to the plaintiff's business based on a plaintiff's demonstration of a likelihood of success on the merits of its claim of trademark infringement. *Camel Hair and Cashmere Institute of America, Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 14 (1st Cir.1986). That said, evidence of significant delay in applying for injunctive relief can

> neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement.

*Citibank, N.A. and Citicorp v. Citytrust and Citytrust Bancorp, Inc.*, 756 F.2d 273, 276 (2d Cir.1985) (citation omitted).

The defendant asserts that significant delay has occurred in this case which indicates that the plaintiff will not suffer irreparable harm. Specifically, the defendant contends that the Court may deny preliminary injunctive relief on the basis of the plaintiff's delay, whether counting from 1) 2001, when Boston Duck Tours first threatened legal action against Super Duck Tours, 2) 2005, when Boston Duck Tours learned that Super Duck Tours would begin operations in Boston or 3) May, 2007, when Super Duck Tours actually began business operations.

■ The plaintiff responds that it commenced this action as soon as actual confusion arose in the general public. Super Duck Tours began operations on May 21, 2007. Five weeks later, the plaintiff filed the underlying complaint. The Court finds the timing neither unreasonable nor a bar to injunctive relief. It is apparent that the plaintiff promptly responded to increased occurrences of actual confusion that resulted when the defendant opened its business in Boston.

With respect to the balance of harms, the plaintiff argues that Super Duck Tours has neither the brand equity nor consumer recognition to be substantially harmed by the imposition of an injunction. Painting a

---

1. Although the defendant offers evidence there are some dictionaries that define "duck" as, *inter alia,* an amphibious vehicle, the plaintiff counters that more "ordinary" dictionaries are devoid of such a definition. The Court finds that the parties' clashing dictionaries are inconclusive as to whether the term is or is not generic.

much more dire picture, the defendant contends that injunctive relief would put it out of business during the busiest part of the tourism season and threaten its survival. The Court is unconvinced that the balancing of the harms favors the defendant, especially in light of the plaintiff's likelihood of eventual success on the merits. It finds, therefore, that the plaintiff has demonstrated that at trial it will presumptively establish a likelihood of confusion due to the defendant's use of the "Super Duck Tours" mark.

## C. Tortious Interference Claim

 In order to succeed on the merits of its claim for tortious interference, a plaintiff carries the burden of demonstrating: 1) a business relationship or contemplated contract with economic benefit, 2) the defendant's knowledge of that relationship, 3) the defendant's interference through improper motive or means and 4) the plaintiff's loss of advantage directly resulting form the defendant's conduct. *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 812, 815–17, 551 N.E.2d 20 (1990).

 The plaintiff alleges that Super Duck Tours is aware that Boston Duck Tours has prospective business relationships with consumers interested in touring Boston. With that knowledge, the plaintiff asserts that the defendant knowingly and intentionally interfered with customers' purchasing decisions by harassing potential customers, misstating the Boston Duck Tours ticket price or misstating that the Boston Duck Tours were sold out. The defendant responds that the plaintiff's interference claim fails as a matter of law because the alleged misrepresentations and interferences relate to previously unknown conduct by Discover Boston, an independent agency, unrelated to Super Duck Tours. There appears to be no dispute that the alleged tortious actions were taken by employees of Discover Boston, not Super Duck Tours.

The Court finds that the plaintiff has failed to demonstrate a likelihood of success on this claim because it has not demonstrated that Super Duck Tours should be liable for the conduct of Discover Boston. Furthermore, the Court is not convinced that the plaintiff will suffer continuing, irreparable harm in the absence of injunctive relief.

## ORDER and PRELIMINARY INJUNCTION

In accordance with the foregoing, the plaintiff's motion for preliminary injunction (Docket No. 2) is, with respect to the claim of trademark infringement, **ALLOWED**, but is, with respect to the tortious interference claim, **DENIED**.

It is further hereby accordingly ORDERED, ADJUDGED and DECREED that:

1) The defendant Super Duck Tours, LLC, and its officers, directors, employees, agents, affiliates, successors assigns, and all those in privity or acting in concert with them, are hereby enjoined from using the term "DUCK TOURS" or a cartoon duck as a trademark or service mark in association with its sightseeing tour service in the greater Boston area. Moreover, while the defendant is not enjoined from all use of the word "DUCK" or "DUCKS" in its mark, it is enjoined from the use of either word in a two-word or three-word trademark in conjunction with either "BOSTON" or "TOURS" and

2) Pursuant to Fed.R.Civ.P. 65(c), the plaintiff, Boston Duck Tours, LP, shall post a bond in the amount of One Hundred Thousand Dollars ($100,000) as security for any costs and damages as may be incurred or suffered by the defendant

should any court later determine that the injunction hereby issued was inappropriately granted.

This Order becomes effective upon plaintiff's filing with the Clerk of a bond or other security in the specified amount. The preliminary injunction shall remain in full force and effect until the case is decided on the merits or until modified by further order of this Court.

**So ordered.**