EMC CORPORATION, Plaintiff,

v.

HEWLETT–PACKARD COMPANY,
Defendant.

No. 99–11123–JLT.

United States District Court,
D. Massachusetts.

July 8, 1999.

Mark P. Szpak, Ropes & Gray, Boston, MA, Chris R. Ottenweller, Terrence P. McMahon, Melissa A. Finocchio, Orrick, Herrington & Sutcliffe, LLP, Menlo Park, CA, for EMC Corporation, plaintiff.

.Laurie S. Gill, Palmer & Dodge, Boston, MA, Martin R. Glick, Annette Hurst, Jeffrey E. Faucette, Howard Rice Nemerovsky Canady, Falk & Rabkin, San Francis-

co, CA, for Hewlett–Packard Company, defendant.

*MEMORANDUM*

TAURO, District Judge.

Plaintiff EMC Corp. ("EMC") produces and sells "enterprise storage systems," which are expensive computer systems that catalog and store computer data from different, incompatible computers and networks. Defendant Hewlett–Packard Co. ("HP") is a leading supplier of computers.

In 1995, Plaintiff EMC agreed to allow Defendant HP to sell EMC's enterprise storage system products to customers who had bought, or who intended to buy, HP computers. The agreement provided that EMC's trademarks would remain on the storage products, and that HP's marks would not appear on the storage products.

When the parties renegotiated the agreement in 1998, Defendant HP tried to convince EMC to allow HP to put its marks, not EMC's marks, on EMC-made products sold by HP. EMC rejected this proposal, and the parties agreed to extend the agreement through 2001. For reasons irrelevant to this case, the parties recently terminated the extended agreement.

In May 1999, Defendant HP announced that it would be offering its own, HP-branded enterprise storage system. The name for the system's "disk array," which is allegedly the major component of an enterprise storage system, is the "HP SureStore E Disk Array MC256."

EMC claims that the name "HP SureStore E Disk Array MC256" infringes on the "EMC" and "EMC $^2$" marks.[1] EMC claims that HP representatives will inevitably abbreviate, and already have abbreviated, the cumbersome product name, thereby putting the letters "E" and "MC" together, and confusing prospective customers as to whether EMC is associated with HP's new product. EMC asks the court to preliminarily enjoin Defendant HP from using the new product name.

## I. ANALYSIS

■ The dispositive factor in a preliminary injunction analysis in the trademark infringement context is likelihood of success on the merits. *See, e.g., Camel Hair and Cashmere v. Associated Dry Goods,* 799 F.2d 6, 14 (1st Cir.1986) (stating that once a trademark plaintiff seeking preliminary injunctive relief shows a likelihood of success on the merits, irreparable harm is presumed).

Defendant does not contest that Plaintiff owns protectible marks ("EMC" and "EMC $^2$"), and has used those marks in commerce. To succeed on the merits, Plaintiff must therefore show that the names of Defendant HP's new enterprise storage products—which include the letters "E" and "MC"—are likely to confuse prospective buyers as to the products' source. *See, e.g., I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d 27, 43 (1st Cir. 1998).

■ The following eight factors guide likelihood of confusion analysis:

(1) the similarity of the marks;

(2) the similarity of the goods;

(3) the relationship between the parties' channels of trade;

(4) the relationship between the parties' advertising;

(5) the classes of prospective purchasers;

(6) evidence of actual confusion;

(7) the defendant's intent in adopting its mark; and

(8) the strength of the plaintiff's mark.

*I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d 27, 43 (1st Cir.1998). "No one factor

---

1. Plaintiff alleges that Defendant has announced an entire family of enterpise storage products whose titles include the letters "E" and "MC." *See* Complaint ¶ 23. For brevity's sake, the court shall use the name "HP Sure-Store E Disk Array MC256" to refer to all new product names that use the letters "E" and "MC."

is necessarily determinative, but each must be considered." *Id.*

### A. Similarity of the Marks

■ Plaintiff's marks are "EMC" and "EMC $^2$." The parties dispute what should be considered Defendant's mark for comparison's sake. Defendant HP urges comparison with its long, formal product name, "HP Surestore E Disk Array MC256." Plaintiff argues that the court should compare its "EMC" mark to shorter versions of the product name which place the letters "E" and "MC" next to each other.

Plaintiff proffers the following evidence of shortened name use: (1) HP's website posted a page entitled "What people are saying about the HP SureStore E MC256;" (2) a letter to customers describing the new product referred to it as the "HP SureStore E MC256;" (3) a promotional packet from HP's website referred to the main product as the "HP SureStore E MC256;" (4) at an industry conference two weeks after the product launch, HP's R & D manager referred to HP's new product as the "EMC256;" (5) HP's Vice President and General Manager of the Enterprise Storage Business Unit referred to the product as the "EMC256" in a May 21, 1999 voice mail message to a senior EMC executive; and (6) an HP employee sent a May 30, 1999 email to an EMC employee referring to HP's new product as the "SureStore E MC256."

Despite HP's assertion that it has directed its employees not to put the letters "E" and "MC" together when referring to the product, Plaintiff's evidence shows that HP has used and will likely continue to use product names that place the letters "E" and "MC" in offending proximity. Indeed, the long and cumbersome formal name invites shortening. The appropriate comparison, therefore, is between the marks "EMC" or "EMC $^2$" and "HP SureStore E MC256" or "SureStore E MC256." *See Laurel Capital Group, Inc. v. BT Financial Corp.,* No. Civ.A. 97–311J, 1999 WL 274819 at *12 (W.D.Pa. Apr.15, 1999) ("Where it is inevitable that the public will shorten the name or mark, the shortened form provides the basis for comparison.").

The similarity of two marks "is determined on the basis of the total effect of the designation, rather than a comparison of individual features." *Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d 812, 817 (1st Cir.1987). A mark may be similar "based on sight, sound and meaning." *Calamari Fisheries, Inc. v. The Village Catch, Inc.,* 698 F.Supp. 994, 1009 (D.Mass.1988).

The HP marks are fairly similar to EMC's mark, favoring a finding of likelihood of confusion. From a visual standpoint, the capitalized letters "E" and "MC" stand out together, despite the space between them, because most of the other letters in the mark are lower case. From an auditory standpoint, the similarity is even greater, as the listener does not perceive a space between the "E" and the "MC" in the HP product name.

Defendant unpersuasively argues that any similarity is significantly reduced by HP's inclusion of its own, robust HP mark in the product name. HP's argument ignores the fact the parties, until very recently, were publicly-recognized partners in the field of enterprise storage product distribution. The inclusion of the HP mark, together with the letters "E" and "MC" in the product name, thus does nothing to reduce public confusion about whether EMC is still partnered with HP on HP's new product.

### B. Similarity of Goods

Defendant does not contest that its products are directly competing with, and therefore substantially similar to, EMC's enterprise storage products. This factor thus favors a finding of likelihood of confusion.

### C. The relationships between the parties' channels of trade and advertising, plus the classes of prospective purchasers

Courts analyze these three factors together. *See, e.g., Volkswagenwerk,* 814

F.2d at 818. HP claims that the sophistication of the prospective purchasers and the nature of HP's sales presentation—which seeks to highlight the advantages of HP's new product over EMC's product—dispel any likelihood of confusion.

HP's argument might carry the day if EMC were claiming that customers are likely to be confused at the time of purchase. *See, e.g., Pignons S.A. de Mecanique v. Polaroid Corp.*, 657 F.2d 482, 489 (1st Cir.1981) ("Those likely to buy an expensive, sophisticated [product] are also least likely to be confused by any similarities in ... marks."). EMC does not so claim, however.

EMC argues a theory of "initial interest" confusion. It claims that HP's use of the letters "E" and "MC" in the new product name will initially cause customers to mistakenly assume that EMC is associated with HP's new product.

HP argues that the First Circuit rejected the "initial interest" confusion theory in two cases from the early 1980s. *See Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1207 (1st Cir. 1983) (stating that "[t]here is no evidence that any temporary confusion that may have occurred regarding the identity of the salesmen had any effect whatever on the ultimate decision of a purchaser whether to buy a particular product .... [a]s ... these products are bought by sophisticated purchasers only after careful consideration of the items being purchased, as well as

their source"); *Fisher Stoves, Inc. v. All Nighter Stove Works*, 626 F.2d 193, 195 (1st Cir.1980) (stating that "[s]ales efforts necessarily resulted in considerable education of the prospective buyer" and that "as a result of education and papers involved there remained no chance of confusion").

*Astra* and *Fisher Stoves* do not support HP's argument. Plaintiffs in those cases did not present initial interest claims to the court. Indeed, the First Circuit did not in either case indicate that it was addressing and rejecting an initial interest claim. Given that a number of circuits have endorsed the theory,[2] the First Circuit would likely have spent more time discussing the issue had it intended to expressly reject the theory.

■ In addition, a District of Massachusetts court implicitly endorsed the initial interest confusion theory in a trade dress case. *See Big Top USA, Inc. v. Wittern Group*, 998 F.Supp. 30, 52 (D.Mass.1998) (Saris, J.) ("[T]he Lanham Act 'forbids a competitor from luring potential customers from a producer by initially passing off its goods as those of the producer's, even if confusion as to the source of the goods is dispelled by the time any sales are consummated.' ") (citing *Dorr–Oliver, Inc. v. Fluid–Quip, Inc.*, 94 F.3d 376, 382 (7th Cir.1996)).

Going back to the three factors from the eight-factor test, HP acknowledges that

2. *See Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 204 (5th Cir.1998) (" 'Infringement can be based upon confusion that creates initial customer interest, even though no actual sale is fully completed as a result of the confusion.' ") (citing 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:6 (4th ed.1997)); *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir.1997) ("[T]he use of ... the confusingly similar title to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion, may be still an infringement."); *Forum Corp. of North Am. v. Forum, Ltd.*, 903 F.2d 434, 442 n. 2 (7th Cir.1990) ("[T]he fact that confusion as to the source of a product or

service is eventually dispelled does not eliminate the trademark infringement which has already occurred."); *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir.1987) (endorsing lower court's finding of "likelihood of confusion not in the fact that a third party would do business with Pegasus Petroleum believing it related to Mobil, but rather in the likelihood that Pegasus Petroleum would gain crucial credibility during the initial phases of the deal" and positing example that "an oil trader might listen to a cold phone call from Pegasus Petroleum—an admittedly oft used procedure in the oil trading business—when he otherwise might not, because of the possibility that Pegasus Petroleum is related to Mobil").

the channels of trade (direct and reseller in-person sales) and the classes of purchasers (large businesses) are the same. Even accepting HP's assertion that it does not plan to advertise the product at issue, these three factors together favor a finding of likelihood of confusion.

### D. Actual Confusion

█ Proof of actual confusion is not necessary to establish likelihood of confusion. *See, e.g., Volkswagenwerk*, 814 F.2d at 819. That EMC does not argue or show large scale actual confusion is, therefore, not fatal to its claim, especially since HP introduced its new product very recently. *See* 3 McCarthy, *supra*, § 23:18 ("The absence of evidence of actual confusion is less significant when the period in which the two marks have co-existed is relatively short.").[3]

### E. Intent

This factor is a wash. On the one hand, the prior relationship of the parties supports an inference that HP intended to trade on EMC's reputation. *See, e.g., Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 929 (10th Cir.1986) ("The inference of intent is especially strong when the parties have had a prior relationship. Such a relationship provides evidence of the alleged infringer's intent to trade on the plaintiff's goodwill."). On the other hand, HP's efforts to distinguish its new product from EMC's product in HP's sales presentations suggests that HP did not intend to capitalize on EMC's name.

### F. Strength of the Mark

█ This factor examines the strength of Plaintiff's "EMC" and "EMC²" marks. Strength depends on: "the length of time a mark has been used and the relative renown in its field; the strength of the

mark in [the] plaintiff's field of business; and the plaintiff's action in promoting the mark." *Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 222 (1st Cir.1989).

EMC, a Fortune 500 company with annual revenues in excess of $4 billion, has displayed the "EMC" mark on all of its enterprise storage products since 1979. Its products have recently been lauded in articles in various national publications. Over the past five years, EMC has spent more than $45 million on domestic and international advertising, and the company has placed several ads promoting its marks in widely circulated publications. EMC's marks are strong.

HP counters with evidence showing that the mark "EMC" and similar marks are registered by a number of different companies. As EMC observes, however, evidence of registration is not evidence of *use* of the marks by third parties, which would show weakness in the mark. *See, e.g., Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167, 1173 (2d Cir.1976) (rejecting evidence of third party registration of similar marks on strength of mark issue where "[d]efendant introduced no evidence that the[ ] trademarks were actually used by third parties, that they were well promoted or that they were recognized by consumers" because "the existence of these registrations is not evidence of what happens in the market place or that customers are familiar with their use").

As the mark is strong, this factor favors a finding of likelihood of confusion. Taking the eight factors together, Plaintiff has shown a likelihood of confusion, and hence a likelihood of success on the merits.

### G. Hardship

█ HP argues that the hardship associated with changing its product names

---

3. Defendant proffers "survey" evidence in the form of answers to questions administered by an HP-hired consultant, to show that there is no actual confusion. The survey's probative value is small, because, *inter alia,* only eight of the eighteen customers contacted respond-

ed, the respondents had just attended an HP product presentation, and, most importantly, the interviewer began by using the product's full formal name, rather than an abbreviation which places the letter "E" next to the letters "MC."

justifies denying injunctive relief. HP alleges that it will lose substantial sales (in excess of $100 million) if it has to change the name of its products in advertising, on the products themselves, and in the products' computer code.

HP's argument does not justify denying EMC relief. EMC contests the alleged potential loss by presenting evidence indicating that it would take only a few days to change the name in the computer code. More importantly, EMC has invested 20 years in developing the goodwill associated with its marks, while HP has invested only a few weeks. HP chose to adopt a name that uses the letters "E" and "MC," and apparently made that decision while party to a four-year-old agreement to distribute EMC's product under EMC's name. HP, not EMC, should bear the consequences of that decision.

To minimize Defendant's hardship, however, the court only enjoins HP from using the letters "MC" in enterprise storage product names. HP's continued use of the capital letter "E," without the letters "MC," is unlikely to cause confusion.

## II. CONCLUSION

As Plaintiff has shown a likelihood of success on its trademark infringement claim, Defendant HP is preliminarily enjoined from using the letters "MC" in its enterprise storage product names.