TYCO HEALTHCARE GROUP LP
and Tyco Healthcare Retail
Group, Inc., Plaintiffs,

v.

KIMBERLY–CLARK CORPORATION, Kimberly–Clark Worldwide, Inc., Kimberly–Clark Global Sales, Inc., Defendants.

Civil Action No. 06–11809–JLT.

United States District Court,
D. Massachusetts.

Dec. 6, 2006.

Joseph F. Shea, Rachel J. Sherman, Timothy D. Johnston, Nutter, Mcclennen & Fish, LLP, Boston, MA, for Plaintiffs.

Dale A. Malone, John P. Iwanicki, Banner & Witcoff, Ltd., Boston, MA, Howard S. Michael, Jeffrey A. Handelman, Brinks Hofer Gilson & Lione, Chicago, IL, for Defendants.

## MEMORANDUM

TAURO, District Judge.

### Background

The following facts are not in dispute. Plaintiff Tyco Healthcare Group LP ("Tyco") holds a registered trademark in the name "FLEXI–WINGS" which it licenses to Proctor & Gamble for use on Always brand maxi pads. The term "FLEXI–WINGS" indicates a feature of the maxi pad whereby flexible tabs protrude from the sides of the pad to provide added protection. Plaintiffs intend to license the name "FLEXI–WINGS" for use on other brands as well. Defendant Kimberly–Clark Corporation ("K–C") holds a registered trademark in the name "Comfort–Flex." K–C and its subsidiaries use this trademark in conjunction with the phrase "wings" on its Kotex brand maxi pads, thus advertising them as having "Comfort Flex Wings." Always and Kotex maxi pads are competing products sold in the same channels of trade.

Tyco admits that K–C has a right to the use of the term "Comfort Flex," but contends that the use of the phrase "Comfort Flex Wings" infringes Tyco's trademark in "FLEXI–WINGS." Plaintiffs allege consumer confusion and irreparable harm. Defendants respond that the term "FLEXI–WINGS" is invalid as descriptive or generic, that the terms are not confusingly similar, and that, in any event, their use of the word "wings" is fair.

Plaintiffs bring state and federal claims of trademark infringement and unfair competition, but concede that the federal trademark claim is dispositive of all claims. Plaintiffs seek a Preliminary Injunction enjoining Defendants from using the combination "Comfort Flex Wings." Also pending before the court are two Tyco motions to strike portions of affidavits submitted by K–C.

### Discussion

In order to verify that no improperly adduced evidence is considered in the court's ruling on the Motion for a Preliminary Injunction, the motions to strike should be considered first.

*Motion to Strike Affidavit in Opposition to Motion*

In their opposition to the Motion for Preliminary Injunction, Defendants submitted an Affidavit in which their Director of Marketing for Feminine Care, Anne Jones, averred, among other things, that (1) "wings" is a generic term, (2) Tyco's use of "wings" is a generic use, (3) in her opinion, the product packaging and

grouping of products in stores eliminates the risk of consumer confusion, and (4) consumers act with care in purchasing these goods.[1] Plaintiffs charge that these statements are unsupported, not based on personal knowledge, and not qualified as expert opinion. Defendants respond by acknowledging that she is not an expert, but argue that her lay opinion is probative. Defendants submitted a supplemental affidavit attesting to her experience and personal knowledge of the industry.

▆▆▆ If a witness is testifying as a lay witness, she may give testimony that is rationally based on her perception, helpful to a clear understanding of the case, and not based on technical knowledge.[2] To the extent that Jones's affidavit attests to final conclusions of law regarding "wings" level of genericity and the likelihood of confusion, it is not helpful since the court must weigh the evidence and make its own determinations on these issues.

▆▆▆ The portions of ¶ 4, ¶ 6, ¶ 11, and ¶ 12 which conclude that "wings" is a generic term are stricken. The remaining portions of these paragraphs that provide information about industry practices and product names are admissible and are not stricken.

▆▆▆ Additionally, in portions of ¶ 18 and ¶ 19, Ms. Jones asserts that the layout of stores prevents consumer confusion and that consumers tend to act with care in considering these goods. Lay opinion of consumers' mental impressions is problematic.[3] Meaningful opinion about consum-

er impressions requires some scientific, technical, or statistical basis in fact. The affidavit lacks this basis, and these portions are also stricken.

Plaintiffs' *Motion to Strike Affidavit in Opposition to Motion* is ALLOWED IN PART AND DENIED IN PART.

K–C opposes Tyco's motion to strike with a supplemental affidavit from Ms. Jones. Tyco has since filed a *Motion to Strike Opposition to Motion,* asking to strike a number of portions of this affidavit. The court considered only ¶ 14 of the supplemental affidavit in its ruling. Tyco has not moved to strike that paragraph. This motion is therefore DENIED AS MOOT.

*Plaintiffs' Motion for Preliminary Injunction*

▆▆▆ To obtain a preliminary injunction, the moving party must establish "1) it is substantially likely to succeed on the merits of its claim; 2) absent the injunction there is 'a significant risk of irreparable harm'; 3) the balance of hardships weighs in its favor; and 4) the injunction will not harm the public interest."[4] When the likelihood of success on the merits is great, the moving party can show somewhat less in the way of irreparable harm and still garner preliminary injunctive relief.[5] In a trademark case, the primary consideration for the court is likelihood of success on the merits.[6]

▆▆▆ In this case, the Plaintiffs allege substantial irreparable harm from consumer confusion, but provide no direct evi-

1. *Aff. of Anne M. Jones,* Paper # 13–1.

2. Fed.R.Evid. 701.

3. *See e.g., Coca–Cola Co. v. Overland, Inc.,* 692 F.2d 1250, 1255 (9th Cir.1982) ("Overland's employees are not qualified to testify as to what their customers are thinking when using the term 'Coke.' ").

4. *I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d 27, 33 (1st Cir.1998).

5. *EEOC v. Astra,* 94 F.3d 738, 743 (1st. Cir. 1996).

6. *Id.*

dence of lost sales or specific harm. Even so, irreparable harm is presumed in a trademark case if there is a likelihood of success on the merits.[7] K–C argues that any inference of irreparable harm should be rebutted by Tyco's six month delay after K–C began using the "Comfort Flex Wings" mark before it filed the Complaint. Tyco responds that only a few months passed from when it learned of the alleged infringement to when it began the legal process necessary to file a civil suit. This minor delay is not sufficient evidence to rebut an inference of irreparable harm.

Defendants aver that factor three tilts in their favor, as they would incur substantial hardship, including millions of dollars in costs, if they are forced to repackage and re-advertise.[8] Plaintiffs dispute these figures and assert that any additional costs would be warranted as appropriate consequences for Defendants' infringement. Weighing these arguments, the court finds that neither party has made a showing on any of the last three factors that would be sufficient to tip the scales. As with most trademark cases, the deciding factor will be the likelihood of success on the merits.

■ To succeed on the merits, Plaintiff must show (1) that it has a valid mark and (2) that defendant's infringing use is likely to result in consumer confusion.[9]

■ Tyco's mark is registered with the Patent and Trademark Office. Plaintiffs are therefore entitled to a presumption of validity.[10] A trademark is valid where the mark is either (1) descriptive and has secondary market meaning, (2) suggestive, (3) fanciful, or (4) arbitrary.[11] A trademark is invalid where it is descriptive and has no secondary meaning, or where it is a generic word for a product.[12] The essential distinction is, therefore, in distinguishing suggestive marks from descriptive marks. " 'A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.' "[13] To overcome the presumption that the mark is distinctive, Defendants must present sufficient evidence that the mark is descriptive or generic.[14]

■ The preliminary evidence indicates that the term "wings" is generic when applied in the current context. Generic marks are terms which name a particular class of goods or answer the question, "What do you call it?"[15] K–C has presented evidence that many companies use the term "wings" to describe tabs protruding from the sides of sanitary pads.[16] K–C has also submitted patents demonstrating the standard industry usage of the

**7.** *Camel Hair & Cashmere Inst., Inc. v. Assoc. Dry Goods Corp.*, 799 F.2d 6, 14 (1st Cir. 1986).

**8.** *Affidavit of Anne M. Jones*, Paper # 13–1, ¶ 20.

**9.** *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir.2006).

**10.** *Id.*

**11.** *Id* at 116.

**12.** *Id.*

**13.** *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 38 n. 3 (1st Cir.2006) (quoting *Equine Techs., Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 544 (1st Cir.1995)).

**14.** *Borinquen Biscuit*, 443 F.3d at 117.

**15.** *See* 1–2 Anne Gilson Lalonde, *Trademark Protection and Practice* § 2.02 (2006).

**16.** *Supplemental Affidavit of Anne M. Jones*, Paper # 19, Exhibit A, ¶ 14.

term "wings" to describe these tabs.[17] These patents include patents obtained and owned by the Plaintiffs which refer to wings in a generic manner.[18] Additionally, the Complaint itself acknowledges the tabs are commonly called wings.[19] Plaintiffs argue that "wings" are defined as flying instruments, and that the term is at least suggestive when used to refer to plastic tabs. This argument misses the point. However the term was once used, the operable question is what the term means in today's marketplace. Considering the evidence submitted regarding current industry usage, it appears likely that the term is generic.

■ Defendants further argue that the term "flexi" is short for "flexible" which simply describes an attribute of the product. Defendants submit that combining a descriptive term and a generic term cannot create an inherently distinctive term. The Federal Circuit has ruled that the compound word "Screenwipe" is not distinctive as applied to products used to wipe computer screens, noting that "the terms remain as generic in the compound as individually...."[20] Plaintiffs respond by pointing to a case where a district court analyzed a compound word, "WiteOut" as a whole to find it was suggestive as it could indicate any number of products, from solvent, to paint, to correction products.[21] Plaintiffs argue that "FLEXI–WINGS" taken as a whole could similarly suggest a number of products, not just tabs on sanitary pad.

The case law supports Plaintiffs' analysis. When the First Circuit found "Equine Technologies" to be suggestive with respect to horse shoes, that court noted that judges must "consider the mark in its entirety, with a view toward 'what the purchasing public would think when confronted with the mark as a whole.'"[22] Rather than dissect the mark into its component pieces, this court will instead evaluate whether it is suggestive or descriptive as a whole.

It is not clear that "FLEXI–WINGS" is suggestive. Unlike "Wite–Out," which describes a process that can be accomplished using an ink correction product, "FLEXI–WINGS" describes an attribute of the product itself. Nonetheless, considering the presumption of validity and the rule against dissecting marks, "FLEXI–WINGS" is likely more than the sum of its parts. While "wings" itself generically describes the tabs protruding from maxi pads, the term "FLEXIWINGS," taken as a whole, requires some imagination to know that it applies to tabs on maxi pads. Unlike "Screenwipe," the conjoined term "FLEXI–WINGS" could apply to a number of products, and thus requires some imagination to understand. Despite its non-distinctive components, the term "FLEXI–WINGS" is sufficiently suggestive to support a finding that it is likely valid.

■ Assuming that "FLEXI–WINGS" is a valid mark, the Plaintiffs must then proceed to prove a likelihood of consumer confusion. This assessment is based on

---

**17.** *Affidavit of Anne M. Jones,* Paper # 13–1, ¶ 6.

**18.** *Id.*

**19.** *Compl.,* Paper # 1, at ¶ 5.

**20.** *In re Gould Paper Corp.,* 834 F.2d 1017, 1019 (Fed.Cir.1987).

**21.** *BIC Corp. v. Far Eastern Source Corp.,* No. 99 Civ. 11385, 2000 WL 1855116, at *3–4, 2000 U.S. Dist. LEXIS 18226, at *8–9 (S.D.N.Y. December 17, 2000).

**22.** *Equine Technologies,* 68 F.3d at 544.

eight factors: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the class of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of plaintiff's mark.[23] The first, second, and eighth of these factors are the most important in this case.

■■■ Similarity of the marks themselves should be determined on the total effect of the mark, not a comparison of the features.[24] Defendants contend that the proximity and succession of "flex" and "wings" in the two marks renders them similar. A change or addition of words where the same operable words are used will not avoid a finding of similarity.[25] This principle is illustrated by a prior opinion of this court that held that the spread out use of the letters E and MC in the product "HP SureStore E MC256" could infringe the trademark "EMC," where both marks were used to market computer storage disks.[26] In that case, the court also ruled that the presence of the HP mark in the infringing product name did not eliminate the similarity.[27] Applying a parallel analysis here, the marks themselves are similar. A consumer who went to the store with the intention of getting the package with "flexi-wings," could acci-

dentally buy the package labeled with the phrase "comfort flex wings." It is likely, as Tyco insists, that the ultimate fact-finder could conclude that the conjunction of the "flex" prefix and the word "wings" renders the marks similar.

Defendants respond that whatever the similarity in the words, the packages and brand names are so different that there could be no risk of consumer confusion. The actual maxi pads offered by the parties are very similar, but the exterior packaging is not. It is undisputed that Always and Kotex are distinct brands with very different packages.[28] The difference in packaging and appearance means that the second factor favors K–C.

This finding is consistent with precedent. In one case, the First Circuit ruled that although "Alpa" and "Alpha" are similar, the difference in major brand names precluded a finding that "Pignoid Alpa" was similar to "Polaroid SX–70 Land Camera Alpha 1."[29] Specifically, the court held, "in certain circumstances otherwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer."[30] Similarly, the Eighth Circuit has noted that a difference in overall packaging can preclude a finding that consumers were likely to confuse Kellogg's Apple Raisin Crisp with General Mill's Oatmeal Raisin Crisp.[31]

---

**23.** *Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d 812, 817 (1st Cir.1987).

**24.** *Id.*

**25.** *See e.g., Beacon Mut. Ins. Co. v. OneBeacon Ins. Group,* 376 F.3d 8, 18 (1st Cir.2004) (finding the parties names similar).

**26.** *EMC Corp. v. Hewlett–Packard Co.,* 59 F.Supp.2d 147, 149 (D.Mass.1999) (Tauro, J.).

**27.** *Id.*

**28.** See *Complaint,* Paper # 1, Exhibit B & Exhibit E.

**29.** *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 657 F.2d 482, 487 (1st Cir. 1981).

**30.** *Id.*

**31.** *General Mills, Inc. v. Kellogg Co.,* 824 F.2d 622, 627 (8th Cir.1987) ("Rather, in analyzing the similarities of sight, sound, and meaning between two marks, a court must look to the overall impression created by the marks and not merely compare individual features. Acknowledging that there are some similarities between the marks, the district court never-

■ In response, Plaintiffs note that tacking a different major brand name onto another party's mark does not preclude a finding of infringement, and that doing so would undermine trademark law.[32] Plaintiffs argue that consumers may know that the brands are separate but that consumers might take the similar marks as indicating that there is some license arrangement or sponsorship arrangement between Tyco and K–C. The First Circuit has recognized that this sort of sponsorship confusion can constitute actionable trademark infringement.[33] The existence of this theory of liability does provide an avenue for finding confusion despite the presence of different brand names. It does not, however, mean that this court must find such confusion. In fact, even the case cited by the Plaintiffs recognizes that the presence of an additional brand name "is merely relevant to whether a likelihood of confusion exists."[34] An additional brand name does not excuse infringement, but it should be considered as a factor in determining the likelihood of either actual or sponsorship confusion.[35]

"FLEXI–WINGS" and "Comfort Flex wings" are somewhat similar. But, the fact that these marks are used on totally different packages with different major brand names means that the eighth factor, the strength of the mark, is important. If customers shop for "the one with the flexi-wings" instead of for Always or Kotex, the different brand names would certainly not prevent confusion. If instead, the "FLEXI–WINGS" mark does not strongly influence the consumer's buying decision, it is highly unlikely that consumers would confuse Always and Kotex brand maxi pads.

Plaintiffs insist that the "FLEXI–WINGS" mark is strong. Plaintiffs suggest that their long-standing licensing of the mark to Proctor & Gamble shows that the mark has worth and recognition. Furthermore, they aver that they devote substantial advertising dollars to bolster the mark. Although the mark may have some value, Plaintiffs fail to produce sufficient evidence that consumers shop for the "FLEXI–WINGS" feature and not for the brand. Tyco has suggested that the competing marks could lead to sponsorship confusion, but has not yet adduced evidence showing that the "FLEXI–WINGS" mark is sufficiently strong that consumers

theless found, after comparing the respective color schemes, lettering styles, and box designs, that the two marks likely are different enough to avoid consumer confusion. In properly focusing on the total effect conveyed by both marks, the district court did not clearly err in finding no confusing similarity between them.").

**32.** *See e.g. T & T Mfg. Co. v. A.T. Cross Co.,* 449 F.Supp. 813, 822 (D.R.I.1978).

**33.** *Attrezzi, LLC v. Maytag Corp.,* 436 F.3d 32, 38 (1st Cir.2006) (discussing a claim of " 'reverse' confusion, by which Attrezzi LLC might be harmed by purchasers misperceiving that Maytag-because of its use of the term Attrezzi in its own advertising—was the source or sponsor of Attrezzi LLC's goods and services.")

**34.** *T & T Mfg. Co.,* 449 F.Supp. at 822.

**35.** Plaintiffs argue that they may apply the "FLEXI–WINGS" mark to different packages and brands in the future, and that the difference in overall packaging should not be considered at all. This argument is unpersuasive at present. Tyco is correct in that a trademark suit alleges a violation of an abstract right to a trademark by an infringing product. Unlike in a patent suit, however, trademark infringement cannot be considered abstractly and without reference to the Plaintiff's use of the product. *See e.g., Pignons S. A.,* 657 F.2d at 487. The factors for determining confusion require consideration of the actual use of the mark in commerce. This court must therefore determine the current likelihood of confusion, and should not speculate as to how that likelihood could change in the future.

would believe that a sponsorship relationship exists between what are clearly competing brands. In other words, although the marks are similar, Plaintiffs provide no evidence that the "FLEXI–WINGS" trademark is strong enough that the difference in the packaging of the goods would fail to prevent consumer confusion.

The remaining factors are not dispositive. Factors three through five address the similarities in the competing products' channels of trade, channels of advertising, and classes of purchasers. The parties agree that the goods are offered to the same class of customers in identical stores. Defendants argue, albeit without support from scientific customer surveys, that this proximity in the marketplace allows consumers to make more discerning decisions. But, Plaintiffs are likely correct that this proximity could increase the risk of confusion. Nonetheless, considering the above finding regarding the strength of the mark, a consumer, even if presented with the products side by side on a store shelf, would not likely confuse the two products, or their sponsors.

The parties agree that no evidence of actual confusion exists at this time. This absence of evidence is not fatal to Plaintiffs as the competing marks have coexisted in stores for only a matter of months.[36] This factor, therefore, carries relatively little weight.

As to Defendants' intent, Plaintiffs submit no direct evidence of intent to appropriate goodwill. Plaintiffs argue that the similarity of the marks coupled with the Defendants' failure to comply with Plaintiffs' cease and desist demands shows bad intent. Considering these preliminary findings, it seems likely that the Defendants simply acted in good faith to defend and exploit their legal rights.

 Considering the eight factors, especially the lack of cause to believe that any similarity in the names would lead to confusion between the actual products, it is unlikely that Tyco will be able to prevail on the merits. This conclusion alone compels the court to deny Plaintiffs' motion for a preliminary injunction. In the alternative, it also appears that K–C would be entitled to a fair use defense. A use is fair where a descriptive portion of an otherwise distinctive trademark is used to describe a product rather than to appropriate goodwill.[37] Specifically, "when a plaintiff has chosen a mark with some descriptive qualities, he cannot altogether exclude some kinds of competing uses even when the mark is properly on the register." [38]

As described above, the term "wings" itself has become a generic term in the feminine hygiene industry used to refer to the protruding tabs on the side of the sanitary pad. Using the word "wings" to describe such tabs would likely be a fair use. Plaintiffs incorporated the word "wings" into the "FLEXI–WINGS" mark, which, by virtue of its non-dissectability, appears to be a valid mark. But, just because dissection should not be used to invalidate Plaintiffs' mark, it does not follow that Plaintiffs should be able to lock up the term "wings" altogether. It is thus possible for a business to make fair use of the terms "wings."

In this case, Defendants simply make fair use of the generic term "wings" along with its own mark "Comfort Flex." Plaintiffs do not dispute that Defendants have a

---

36. *Borinquen Biscuit Corp.,* 443 F.3d at 121.

37. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 12 (2d Cir.1976) (Friendly, J.).

38. *Id.*

right to "Comfort Flex," but argue that the merging of that mark with the term "wings" invokes Plaintiffs' mark and unfairly places "flex" confusingly close to "wings." Even if this merging did create consumer confusion, a use need not be free of confusion to be fair.[39] From its own examination of the packaging and products at issue, and without the benefit of any scientific consumer survey, this court preliminarily concludes that a consumer would see the phrase "Comfort Flex wings" as indicating that the product has comfortable and flexible wings, and not that the product was made by or sponsored by Tyco. Defendants' claim is bolstered by their own product. Their label reads in full "Comfort Flex Wings Ailes."[40] "Ailes" is French for wings. This phrasing indicates that K–C is simply, fairly coupling its own distinctive registered mark with a generic noun that is appropriately translated for international distribution. By conjoining its trademark with the generic word "wings," K–C is simply fairly describing its product.

### Conclusion

Tyco's mark appears to be valid. At this point, the evidence indicates that Plaintiffs would not be able to show a likelihood of confusion. Even if they could make such a showing, preliminary evidence shows that Defendants' use is excused as fair. Plaintiffs' *Motion for a Preliminary Injunction* is DENIED. An order will issue.

---

39. *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111, 121–22, 125 S.Ct. 542, 160 L.Ed.2d 440 (2004) (noting the applicability of the fair use defense where there is some consumer confusion).

40. *Compl.,* Paper # 1, Exhibit E.